# Illinois Official Reports

## Appellate Court

---

### *People v. Medrano*, 2014 IL App (1st) 102440

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE MEDRANO, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-2440 |
| Filed<br>Rehearing denied | April 16, 2014<br>June 13, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of defendant's postconviction petition challenging his sentences for multiple sexual offenses was reversed and the cause was remanded for new second-stage proceedings, since unanswered and unresolved fact-specific questions as to the trial judge's intentions precluded a determination of whether the sentence was void. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 92-CR-8203; the Hon. Thomas P. Fecarotta, Jr., Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier and Michael G. Soukop, both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Annette N. Collins and Susan R. Schierl Sullivan, Assistant State's Attorneys, of counsel), for the People. |

PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Neville concurred in the judgment and opinion.
Justice Pucinski dissented, with opinion.


**OPINION**

¶ 1     Defendant Jose Medrano contends for the first time on appeal that his sentences are void and he must be allowed to withdraw his guilty plea because the trial court did not advise him that his sentences for aggravated criminal sexual assault must be served consecutively rather than concurrently. The problem with cases like this, where the defendant argues for the first time on appeal that his sentence and plea are void, involves the record from the trial and the postconviction proceedings on the sentencing issue. Often the record is incomplete or nonexistent, which hinders this court's efforts in determining whether the trial court erred in sentencing the defendant. That is the situation we face regarding the trial judge's intent when he sentenced Medrano to 17 years' imprisonment. Accordingly, we reverse the dismissal of Medrano's petition to permit a new second-stage postconviction hearing to determine the basis of the trial court's sentence.

¶ 2                                    BACKGROUND

¶ 3     Jose Medrano was charged in indictment number 92 CR 8203 with 16 felony counts, including 8 counts of aggravated criminal sexual assault, 2 counts of criminal sexual assault, 1 count of criminal sexual abuse, 3 counts of aggravated kidnapping, and 2 counts of kidnapping. These charges stem from an incident on the morning of March 14, 1992, when he allegedly lured his roommate's fiancée to his apartment under false pretenses and sexually assaulted her numerous times. On May 15, 1992, while out on bond, Medrano attacked another woman and was charged in case number 92 CR 13165 with attempted first degree murder, armed robbery, aggravated criminal sexual abuse, aggravated kidnapping, aggravated criminal sexual assault, and aggravated battery. In case number 92 CR 13165, Medrano was convicted by a jury and on May 19, 1994, was sentenced to an aggregate prison term of 90 years. The appellate court affirmed Medrano's conviction but remanded several times to address sentencing errors. Ultimately, however, a reconfigured 90-year prison term was upheld on appeal (*People v. Medrano*, No. 1-00-0857 (2002) (unpublished order under Supreme Court Rule 23)). Medrano currently serves that sentence.

¶ 4     On May 31, 1994, in case number 92 CR 8203, the trial judge granted defense counsel's request for a Supreme Court Rule 402 plea conference (Ill. S. Ct. R. 402 (eff. Feb. 1, 1981)). During the conference, the State requested the maximum sentence of 30 years, while defense counsel argued for the minimum sentence of 6 years. Afterward, the trial judge told Medrano:

> "I'm sure your fine lawyer, Mr. Slonim, relayed the results of the 402 conference to you. I indicated to the lawyers that on a plea of guilty, after reviewing everything, going over reports, and listening to the arguments of counsel, the State was

recommending 30 years which is the maximum sentence, 30 years consecutive to the 90 year sentence you are already serving. Your lawyer is asking, on the other hand, for six years which is the minimum the court could impose. After reviewing everything I initially said I would consider a sentence 20 years consecutive. Upon further arguments from your lawyer I said I would consider a period of seventeen years incarceration with credit for the time you have already served being given to you."

¶ 5 Medrano told the judge he wanted to plead guilty to all 16 counts. The court advised Medrano of the applicable sentencing range, stating that because he would be pleading guilty to the Class X offense of aggravated criminal sexual assault, "I can possibly sentence you to, as an aggregate on all of these charges, a minimum of six years," and "up to 30 years." The judge also stated that because Medrano committed the offenses in the attempted murder case while he was out on bond for the offenses in this case, or "because in consideration of all the other factors involved and arguments of the lawyers," it was possible for the court to sentence him to consecutive terms. The judge informed Medrano the sentence he would impose would be consecutive to the sentence he already was serving for the attempted murder case, but it appears he did not admonish Medrano that each conviction for the charged offenses of aggravated criminal sexual assault and criminal sexual assault would trigger mandatory consecutive terms.

¶ 6 A detailed statement of facts was entered into the record as part of Medrano's plea. The parties stipulated that on March 14, 1992, Medrano lived in an apartment with the victim's fiancé. While the fiancé was out of town, Medrano called the victim and told her that her fiancé's cat was sick and needed to be taken to the veterinarian immediately. Medrano told the victim to come to the apartment to get the cat because he needed to leave for work. When the victim arrived at the apartment, Medrano directed her to the bathroom and grabbed her from behind, causing an injury to her left eye. The victim saw a butcher knife in the bathroom. Medrano then took the victim to his bedroom, where he forced her to remove her clothes and perform oral sex on him. The victim saw what she believed was a handgun on Medrano's bed, which later turned out to be a BB gun. Medrano took the victim into the living room, where he again forced her to perform oral sex on him. He forced the victim to the living room floor where he penetrated her vaginally from behind and again forced her to perform oral sex on him. The parties also stipulated that during the course of the incident, Medrano touched the victim's breasts for the purpose of sexual gratification.

¶ 7 When the victim cried out for help, Medrano forced her back into the bathroom. He told her he could not do this anymore and had not realized what he was doing because he was on drugs. The victim promised Medrano she would not call the police, and about an hour later, he allowed her to leave, stating he had already screwed up and was going to go to jail. Medrano packed his belongings and left the apartment. A short time later, police took Medrano into custody and he made oral and written confessions to the police about the incident. Medrano stipulated that at the time of the incident he had prior convictions for rape and deviate sexual assault.

¶ 8 The trial judge accepted Medrano's guilty plea on all 16 counts and said he would consider the presentence investigation report previously prepared in case number 92 CR 13165. The prosecutor stated he would stand on the argument made during the Rule 402 conference, emphasizing the victim impact statement, which the court had read. In mitigation, defense counsel pointed to Medrano's intoxication during the offense and his expressions of remorse

over the incident. The court said, "As I indicated, the Court did participate in the 402 conference. I said I would consider a sentence of seventeen years consecutive to the 90-year sentence imposed by Judge Hoffenberg." After considering arguments and all the factors in aggravation and mitigation, the court imposed a term of 17 years' imprisonment on each count, concurrent to one another, but consecutive to the 90-year term in the defendant's attempted murder case. The court further stated that "some of the lesser included offenses will merge by operation of law," but did not explain which ones. The order of commitment imposed a 17-year term on each of the 16 counts.

¶ 9        Medrano pursued postconviction relief in case number 92 CR 13165, filing a *pro se* petition on April 16, 1997, alleging a denial of due process because he was unfit to stand trial due to injuries he had sustained in a jail fight. The circuit court summarily dismissed his petition and Medrano appealed, arguing the dismissal was void because his petition was ruled on beyond the 90-day statutory time limit under section 122-2.1(a) of the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-2.1(a) (West 1996)). The appellate court consolidated that appeal with Medrano's direct appeal of his sentences, reversed the dismissal of the *pro se* petition, and ordered the case remanded to the trial court for further postconviction proceedings. *People v. Medrano*, Nos. 1-97-3718, 1-97-4612 (1998) (unpublished order under Supreme Court Rule 23).

¶ 10       In December 2001, Medrano filed a supplemental petition for postconviction relief in case number 92 CR 13165, again arguing he was denied due process because the trial court had failed to conduct a fitness hearing. After hearing arguments, the circuit court dismissed Medrano's petition. Medrano appealed, relying on an affidavit from Dr. James Corcoran, who, after reviewing Medrano's medical records and examining him, concluded that Medrano's symptoms were indicative of a traumatic brain injury that rendered him unable to assist in his defense. The appellate court, however, affirmed the dismissal on the grounds that Medrano's argument could have been raised on direct appeal but was not. *People v. Medrano*, No. 1-05-1634 (2008) (unpublished order under Supreme Court Rule 23).

¶ 11       Medrano did not file a motion to withdraw his plea within 30 days in case number 92 CR 8203 (see Ill. S. Ct. R. 604(d) (eff. Aug. 1, 1992)) or file a direct appeal, but on July 26, 2005, more than 11 years after he pled guilty, Medrano filed a *pro se* petition under the Act (725 ILCS 5/122-1 *et seq.* (West 2010)). (The postconviction petition certificate of service showed that Medrano mailed the petition on May 15, 2005, but the trial court considered the date of filing, July 26, 2005, as the operative date for the first phase of the postconviction proceedings.) Medrano raised three claims in his petition: (1) denial of due process because he was unfit at the time of his plea due to injuries he suffered in a jail fight while awaiting trial; (2) ineffective assistance of trial counsel for failing to request a fitness hearing; and (3) ineffective assistance of trial counsel for failing to challenge his convictions based on lesser included offenses and the one-act, one-crime doctrine, and for failing to contest his sentence on criminal sexual abuse as exceeding the statutory maximum. Medrano's *pro se* petition was not notarized and was accompanied by an undated, unnotarized affidavit stating: "My failure to file a timely motion to withdraw my plea, my delay in filing my postconviction petition in this cause, was due to the lingering effects of my unfitness and to the prolonged inability to acquire any assistance given my diminished capacity in preparing the petition." Medrano also attached the report from Dr. Corcoran concluding, retrospectively, that Medrano was unfit in 1994 when he entered his guilty plea.

¶ 12    The trial court determined that the *pro se* petition stated the gist of a constitutional claim, appointed a public defender, and advanced the case to second-stage postconviction proceedings. Medrano's appointed counsel filed an amended postconviction petition on May 29, 2009, which included the same issues regarding Medrano's fitness, with some additional factual support, as well as challenges to the fact that Medrano was sentenced on all 16 counts of the indictment. The amended petition also reiterated Medrano's claim that trial counsel was ineffective for failing to pursue the fitness and sentencing issues.

¶ 13    On September 18, 2009, the State filed its motion to dismiss the amended petition for postconviction relief arguing that it was untimely filed and that Medrano failed to sustain his burden of showing his lack of culpable negligence. After hearing argument, the court granted the State's motion to dismiss, finding that Medrano failed to make a showing of a lack of culpable negligence in filing his petition late, noting that he was able to file a similar issue regarding his fitness years earlier in his attempted murder case and did not explain why he could not do the same for the petition in this case. Medrano timely filed his notice of appeal.

¶ 14                                    ANALYSIS

¶ 15    Medrano abandons the issues he raised in his postconviction petition and now claims, for the first time, that the trial court erred in sentencing him to concurrent sentences because section 5-8-4(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5-8-4(a) (West 2010)) required that his sentence be served consecutively. Medrano maintains that consecutive 17-year sentences would exceed the 30-year sentence the trial judge advised him was the maximum, and therefore, his sentence is void. Medrano asserts the void sentences rendered his guilty plea void and asks this court to remand so that he can withdraw his guilty plea. Whether a sentence is void is a question of law, which we review *de novo*. *People v. Hauschild*, 226 Ill. 2d 63, 72 (2007).

¶ 16                          Issue of Timeliness of Review

¶ 17    Preliminarily, we address the State's contention that Medrano forfeited review of his claim by failing to timely raise it on direct appeal or in his postconviction petition. The State acknowledges the general rule that a void sentence can be corrected at any time and is not subject to waiver or forfeiture. See *People v. Hillier*, 237 Ill. 2d 539, 546-48 (2010). But the State asserts that because Medrano's original postconviction petition–the vehicle he now uses to claim his sentence is void–had been filed well beyond the three-year statute of limitations period of section 122-1 of the Act (725 ILCS 5/122-1 (West 2010)), it is procedurally barred. The State argues that *People v. Flowers*, 208 Ill. 2d 291 (2003), decided this issue.

¶ 18    In *Flowers*, the defendant filed a motion under Illinois Supreme Court Rule 604(d) (eff. Aug. 1, 1992) asking the trial court to reconsider her sentence contending, in part, that the portion of her sentence authorizing the Department of Corrections to withhold some of her prison income to pay court costs was void because the Unified Code of Corrections did not authorize the withholding. The trial court denied the motion as untimely. The appellate court reversed, holding that even though untimely, the requirements of Rule 604(d) were not jurisdictional and could be excused when consideration of an unauthorized aspect of a sentence would better serve the ends of justice. *Flowers*, 208 Ill. 2d at 299.

¶ 19    The supreme court disagreed and held that "[a] void order does not cloak the appellate court with jurisdiction to consider the merits of an appeal." *Id*. at 307. Although the supreme court recognized a void order may be attacked at any time, the court held that "the issue of voidness must be raised in the context of a proceeding that is properly pending in the courts." *Id*. at 308. "If a court lacks jurisdiction, it cannot confer any relief, even from prior judgments that are void." *Id*. The only matter properly before the appellate court was the circuit court's lack of jurisdiction over Flower's untimely Rule 604(d) motion. *Id*. at 307. Because strict compliance with Rule 604(d) was a condition precedent to an appeal on the merits, the supreme court held the appellate court "had no authority to intervene and vacate that portion of Flowers' sentence authorizing 50% of her income to be withheld." *Id*. at 308-09.

¶ 20    Contrary to the State's contention, *Flowers* does not apply to the facts before us. Unlike Rule 604, which divests the trial court of jurisdiction in the original action after 30 days have passed from the entry of judgment, the Post-Conviction Hearing Act's time limits are not a jurisdictional bar but, rather, act as a statute of limitations that can be raised, waived, or forfeited by the State. *People v. Boclair*, 202 Ill. 2d 89, 97 (2002). The Act provides the following deadlines for a defendant in a noncapital case to file a petition:

> "When a defendant has a sentence other than death, no proceedings under this Article shall be commenced more than 6 months after the conclusion of proceedings in the United States Supreme Court, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a petition for certiorari is not filed, no proceedings under this Article shall be commenced more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence. If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122-1(c) (West 2010).

¶ 21    Medrano claimed his failure to timely file a *pro se* postconviction petition was not due to culpable negligence but rather to the lingering effects of the injuries he sustained during a prison fight. The circuit court found that Medrano's petition stated the gist of a constitutional claim and advanced the case to the second-stage of postconviction proceedings. Even though the circuit court ultimately dismissed Medrano's postconviction petition as untimely, it had authority and jurisdiction to make that determination and enter its order. While an issue not included in a postconviction petition cannot be raised for the first time on appeal, a defendant "may raise the issue in a successive petition if he [or she] can meet the strictures of the 'cause and prejudice test.' " *People v. Jones*, 211 Ill. 2d 140, 148-49 (2004). Therefore, the circuit court had jurisdiction to address the issues raised in Medrano's petition and, since Medrano timely appealed the dismissal order, we have jurisdiction to review it. See 725 ILCS 5/122-1(c) (West 2004). The fact that the issue of Medrano's void sentence is being raised for the first time on appeal is also not a bar since, as noted, void judgments and orders can be challenged on collateral review for the first time on appeal. *People v. Thompson*, 209 Ill. 2d 19, 25 (2004).

¶ 22                    Issue of Mandatory Consecutive Sentences

¶ 23    Turning to the merits of Medrano's appeal, our supreme court has held that concurrent sentences are void where the statutory requirements for mandatory consecutive sentences are

met. *People v. Bishop*, 218 Ill. 2d 232, 254 (2006). At the time Medrano committed the crimes for which he pled guilty, section 5-8-4(a) of the Unified Code of Corrections provided:

> "When multiple sentences of imprisonment are imposed on a defendant at the same time, *** the sentences shall run concurrently or consecutively as determined by the court. *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12-13 or 12-14 of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively. Sentences shall run concurrently unless otherwise specified by the court." 730 ILCS 5/5-8-4(a) (West 1992).

¶ 24 Although it is not clear from the record, it appears Medrano was convicted of at least two counts of aggravated criminal sexual assault, a Class X felony that, under section 5-8-4 of the Code, would require the trial court to impose consecutive sentences. Medrano contends that because the trial court instead imposed concurrent 17-year sentences, both his sentence and guilty plea are void and the case should be remanded so that he can withdraw his plea. The State argues that although Medrano entered a guilty plea on all 16 counts of the indictment, the court only convicted him on 2 counts of aggravated criminal sexual assault, while all of the other charges merged. Therefore, the State argues, because this court can reconfigure the sentence to comply with the mandatory statutory maximum of 30 years for aggravated criminal sexual assault, neither the sentence nor the plea is void.

¶ 25 Medrano cites *People v. White*, 2011 IL 109616, to support his contention that his guilty plea is void and requires remand. In *White*, the defendant entered a negotiated guilty plea to first degree murder with a firearm and possession of contraband while in a penal institution in exchange for consecutive 28-year and 4-year sentences, respectively, and the factual basis for the plea established that a firearm was used in the commission of the murder. *White*, 2011 IL 109616, ¶¶ 4-6. Nine days later, the defendant filed a motion to vacate his guilty plea alleging he was not properly admonished of the 15-year firearm enhancement, which made the sentencing range 35 to 75 years rather than 20 to 60 years. *Id.* ¶¶ 9, 11. The circuit court denied the motion, but the appellate court found that the sentence was void and invalidated the entire plea agreement. The supreme court affirmed, finding that the 15-year mandatory sentencing enhancement for committing first degree murder while armed with a firearm applied despite the trial court's belief that it did not. *Id.* ¶ 11. The court reiterated the axiom that a court cannot impose a sentence that does not conform to statutory guidelines, and the court exceeds its authority when it orders a lesser or greater sentence than mandated by statute. *Id.* ¶ 20. The supreme court thus held that the sentence was void, which made the entire plea agreement void as well. *Id.* ¶ 21. The court remanded to the trial court, with directions to allow the defendant to withdraw his plea. *Id.* ¶ 31.

¶ 26 In *People v. Donelson*, 2013 IL 113603, the supreme court recognized an exception to *White*'s remedy of requiring withdrawal of both the guilty plea and sentence when the sentence is void. In *Donelson*, the defendant pled guilty to murder, home invasion, and aggravated criminal sexual assault in exchange for concurrent sentences of 55, 30, and 30 years on the respective charges. *Id.* ¶ 4. Six years later, the defendant filed a petition for relief from judgment (735 ILCS 5/2-1401(f) (West 2010)), claiming that his plea was involuntary and that

his counsel provided ineffective assistance. The circuit court dismissed the defendant's petition, and the defendant appealed, asserting for the first time that, because section 5-8-4 of the Code required consecutive sentences and he was sentenced to concurrent terms, his plea was void and should be vacated. *Donelson*, 2013 IL 113603, ¶ 12. The appellate court agreed that the sentences were void based on the requirement of section 5-8-4, but held that defendant's guilty plea was not void where the 50-year sentence fell within the range of the aggregate sentences that could be imposed. *Id.* ¶ 21 (range for murder was 20 to 60 years and range for the other two offenses was 6 to 30 years, meaning the minimum was 32 years and the maximum was 120 years' imprisonment). The appellate court enforced the overall plea agreement consistent with the relevant statutes by vacating the void sentence and remanding for resentencing with a mandatory consecutive sentence totaling no more than 50 years' imprisonment. *Id.* ¶ 13.

¶ 27    In affirming the appellate court, the supreme court found *White* distinguishable on the issue of whether the plea agreement was void. *Id.* ¶ 26. The court explained that in *White*, the aggregate sentence imposed, 32 years' imprisonment, was contrary to the statutory authority, which mandated a minimum sentence of 35 years' imprisonment, and thus, had the supreme court remanded only the sentence, the circuit court would not have been able to impose the total number of years to which defendant had agreed. *Id.* Based on those distinct circumstances in *White*, the court determined that the plea agreement could not be implemented and remanded to the trial court to allow the defendant to withdraw his plea and proceed to trial, if he chose to do so. *Id.* The court observed that unlike *White*, the defendant in *Donelson* did not claim improper admonishments regarding the sentencing range for individual sentences when he agreed to the 50-year term and his sentence could be reconfigured, consistently with statutory mandates, in a way that would give him the benefit of his bargain. *Id.* ¶ 27. Therefore, the court remanded to the circuit court with directions to resentence the defendant in accordance with his plea agreement and applicable statutes. *Id.* ¶ 29.

¶ 28    If we adopt the State's argument that Medrano was only convicted of 2 counts of aggravated criminal sexual assault and the other 14 counts merged, we could, as in *Donelson*, remand for resentencing. The trial court advised Medrano that the statutory range for aggravated criminal sexual assault is 6 to 30 years, so the trial court could sentence Medrano to consecutive terms that do not exceed the maximum of 30 years. Unlike Donelson, Medrano did not enter a negotiated plea, but rather made an open plea, so he could not claim that he was deprived of the benefit of his bargain if the trial court decided to sentence him to two 15-year terms. See, *e.g.*, *People v. Hughes*, 2012 IL 112817, ¶ 68 ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (Internal quotation marks omitted.)). Alternatively, if the trial court intended to sentence Medrano to 17 years' imprisonment for both charges it could reconfigure Medrano's sentence by sentencing him to at least 6 years on both counts for a total of 17 years aggregate.

¶ 29    Medrano argues that because he pled guilty to more than just two aggravated criminal sexual assault charges, a 17-year sentence would fall below the minimum consecutive sentence required by statute. In that case, under *White*, Medrano's sentence would be void, since a court cannot impose a sentence that does not conform to statutory guidelines. *White*, 2011 IL 109616. Medrano thus contends we are required to remand to the circuit court to permit him to withdraw his plea and proceed to trial if he so chooses.

¶ 30    When the defendant argues for the first time on appeal that the sentence and plea are void, the record from the trial and the postconviction proceedings on the sentencing issue are often incomplete or nonexistent, which hinders this court's efforts in determining whether the trial court erred in sentencing the defendant. Here, the trial judge intended for some of the 16 charges to merge, but which ones? We are also unable to ascertain whether the trial court intended to sentence Medrano to consecutive 17-year sentences for all charges on which he was convicted or a maximum consecutive sentence of 17 years. If it is the former and if Medrano was convicted only of two counts of aggravated criminal sexual assault, the sentence could be reconfigured, under *Donelson*, to comply with the statutory guidelines of a 6- to 30-year sentence. If it is the latter, the sentence might still comply with the statute, depending on which counts the trial court entered judgment on and which counts merged. See *People v. Dixon*, 91 Ill. 2d 346, 353-54 (1982) (holding that under Illinois Supreme Court Rule 615(b), a reviewing court has authority to remand the cause for sentencing on the unsentenced convictions). Alternatively, if, as Medrano claims, he was sentenced to 17 years on more than just two counts of aggravated criminal sexual assault, the sentence when served consecutively may exceed the statutory maximum and, under the holding in *White*, could render both the sentence and the plea void.

¶ 31    We take into consideration the State's interests when permitting a defendant to assert for the first time on postconviction appeal that his sentence and plea are void and that he should be permitted to proceed to trial. As the supreme court noted in *Donelson*, "[t]hough rarely emphasized *** the other half of the contractual equation [with a plea agreement] is the benefit of the bargain accruing to the State, a consideration that looms larger as the temporal gap between the commission of the offenses and attempts to withdraw the guilty plea widens." *Donelson*, 2013 IL 113603, ¶ 19. In *People v. Young*, 2013 IL App (1st) 111733, defendant was estopped from raising a postconviction claim that his sentence, entered nearly 10 years earlier after pleading guilty to first degree murder, was void for failing to include a mandatory firearm enhancement. The court found it defied logic that defendant wanted to serve a longer term than the improper sentence he received without the firearm enhancement. Further, the court noted that the defendant had already reaped the benefit of the lesser sentence and permitting him to use the improper sentence as a vehicle to withdraw his guilty plea and go to trial could harm the State, given the passage of time and the recollection of witnesses. "Temporal gap" concerns figure equally in cases such as this, where the defendant made an open plea that he now seeks to withdraw so that he can proceed to trial. In the nearly 20 years that have elapsed since Medrano was charged and pled guilty, key evidence may have disappeared and witnesses may have died or relocated and their memories regarding facts and details necessary to the State's prosecution of the case may have faded.

¶ 32    While this appeal was pending, the court granted defendant's motion to cite *People v. Deng*, 2013 IL App (2d) 111089, and *People v. Smith*, 2013 IL App (3d) 110738, as additional authority. In each of those cases, the defendants pled guilty to first degree murder and their sentences were subject to a mandatory enhancement of 25 years to life based on the discharge of a firearm. As a result, the minimum sentence for each defendant was 45 years' imprisonment. Because the defendants were not properly admonished about the mandatory enhancement and were given less than the minimum sentence, 35 years for Deng and 30 years for Smith, the appellate court, relying on *White*, found the sentences void and permitted the defendants to withdraw their guilty pleas and proceed to trial. Neither *Deng* nor *Smith* provides

- 9 -

a basis for permitting defendant to withdraw his guilty plea, because in those cases, unlike in *Donelson* and this case, the sentences imposed were less than the statutory minimum, making it impossible for the trial court to reconfigure defendants' sentences to comply with statutory guidelines.

¶ 33    In summary, we cannot make a determination as to whether Medrano's sentence is void under the statute because too many unanswered, fact-specific questions remain unresolved regarding the trial judge's intent in sentencing Medrano to 17 years' imprisonment. Therefore, we reverse the dismissal of Medrano's petition and remand to the circuit court for a new second-stage postconviction proceeding.

¶ 34                                   CONCLUSION

¶ 35    For these reasons, we reverse the trial court's dismissal of Medrano's petition and remand for further consideration as a stage-two proceeding in accord with sections 122-2 through 122-6 of the Act. 725 ILCS 5/122-2 to 122-6 (West 2010).

¶ 36    Reversed and remanded.

¶ 37    JUSTICE PUCINSKI, dissenting.

¶ 38    Regretfully, I cannot join in any portion of this decision. The majority, in the body of this opinion, suggests remand of this case to the court for "clarification" to achieve a reconfiguration of Medrano's sentence in this case. Then, in its conclusion and disposition of the case the majority reverses the dismissal of Medrano's postconviction petition, without addressing the circuit court's dismissal of defendant's postconviction petition based on his alleged unfitness because it was filed well beyond the limitations period without a showing of a lack of culpable negligence for the delay. The majority then remands for stage-two postconviction proceedings "in accord with sections 122-2 through 122-6 of the Act," without any instructions directing clarification of the sentencing order and without any instruction as to defendant's sentence. See *supra* ¶ 35. Either disposition is not supported procedurally, factually or legally and is contrary to well-established law.

¶ 39    First, this case had already advanced to stage-two postconviction proceedings below, where the court granted the State's motion to dismiss Medrano's petition, finding that Medrano failed to make a showing of a lack of culpable negligence in filing his petition late. The majority remands for the same stage of proceedings and does not address the fact that Medrano's underlying postconviction petition was untimely. Medrano's postconviction petition cannot be maintained and there can be no further postconviction proceedings. The dismissal of the petition was proper and so I would affirm this dismissal.

¶ 40    Medrano's appeal of the dismissal of the postconviction petition was merely a vehicle through which we could review his claim that his sentence was void. There is no basis for a remand for any clarification or reconfiguration of Medrano's sentence in this case either, because it is clear as a matter of law that Medrano's sentence and plea are both void. This is a matter we determine as a matter of law and, under current precedent, the proper outcome is to remand with instructions to allow Medrano the opportunity to withdraw his plea, if he so chooses.

- 10 -

¶ 41 Second, the majority incorrectly states that the "problem" where a defendant argues for the first time on appeal that his sentence and plea are void is that "[o]ften the record is incomplete or nonexistent, which hinders this court's efforts in determining whether the trial court erred in sentencing the defendant," and that "[t]hat is the situation we face regarding the trial judge's intent when he sentenced Medrano to 17 years' imprisonment." *Supra* ¶ 1. The majority states it is "unable to ascertain whether the trial court intended to sentence Medrano to consecutive 17-year sentences for all charges on which he was convicted or a maximum consecutive sentence of 17 years." *Supra* ¶ 30. The majority goes on to conclude that it "cannot make a determination as to whether Medrano's sentence is void under the statute because too many unanswered, fact-specific questions remain unresolved regarding the trial judge's intent in sentencing Medrano to 17 years' imprisonment" to support reversal and remand. *Supra* ¶ 33.

¶ 42 The majority's statements are clearly and unequivocally refuted by the record. Both the written sentencing order and the court's pronouncement of the sentence are in the record, and both clearly indicate a sentence of 17 years for all offenses, concurrent, for an aggregate concurrent term of 17 years, which is void.

¶ 43 The written sentencing order is in the record. The judge's "intent" is irrelevant. We look to the actual sentence that was imposed. The sentencing order provides:

"PGJWFG–JOF–*17 years* IDOC

Credit for 1508 days Time Already Served.

*All 16 counts* of this case *concurrent to each other*

but consecutive time to 92 CR 13165." (Emphases added.)

¶ 44 The written sentencing order clearly states conviction on all 16 counts, 17 years' imprisonment on all counts, "concurrent."

¶ 45 We also have the transcript of the court's oral pronouncement at sentencing in the record. Even if there were confusion regarding the written order, precedent dictates that the oral pronouncements of the court prevail. The oral pronouncement of the judge is the judgment of the court, and the written order of commitment merely evidences that judgment. *People v. Jones*, 376 Ill. App. 3d 372, 395 (2007). Where a conflict arises between the two, the language of the court prevails over the language of the mittimus. *People v. Willis*, 184 Ill. App. 3d 1033, 1047 (1989). The court clearly indicated at the sentencing hearing that it was entering convictions on all counts, 17 years concurrent on all counts:

"In the sentences in each of these sixteen cases, *all sixteen* will run *concurrent* with each other, *all sixteen*. Some of the lesser included offenses will merge by operation of law. The sentence will be, in its entirety, seventeen years consecutive." (Emphases added.)

¶ 46 The State *concedes* that the sentencing order reflects 16 concurrent sentences of 17 years. The fact that the sentences were concurrent is conclusively established by the record and is not even in dispute by the parties.

¶ 47 There are no "unanswered, fact-specific questions" to resolve. *Supra* ¶ 33. The sentence was not unclear; it is simply void and must be vacated. On this basis alone, under all precedent, defendant must be allowed to withdraw his plea.

¶ 48 Third, the majority proposes a method of reconfiguring Medrano's sentences that is contrary to well-established law. The majority incorrectly posits that reconfiguring a sentence

means the court can fashion new individual sentences and, additionally, impose a brand new aggregate sentence. This is not at all how it works.

¶ 49 The remedy of reconfiguring void sentences to give the defendant the "benefit of his bargain" is available in fully negotiated plea cases.[1] In fully negotiated pleas, the parties agree to a specific aggregate sentence. In fully negotiated pleas, reconfiguration is possible to give the "benefit of the bargain" remedy to approximate the sentence agreed to by the defendant. Reconfiguration means reconfiguration of void sentences to fit within a valid total aggregate sentence that is within sentencing guidelines. If the court can reconfigure the individual sentences to add up to that aggregate in a way that all individual sentences and the aggregate are within sentencing guidelines, then courts may remand for reconfiguration by reducing individual sentences and restructuring, even if the individual sentences for the individual offenses were within sentencing guidelines. See *People v. Donelson*, 2013 IL 113603 (fully negotiated plea agreement for a specific total aggregate sentence of 50 years but court mistakenly imposed concurrent sentences when consecutive sentences were required; held, the total aggregate sentence imposed by the court was valid and complied with statute and could be effected by reconfiguring the sentences to give the parties the "benefit of their bargain"); *People v. Whitfield*, 217 Ill. 2d 177 (2005) (fully negotiated plea, the aggregate sentence actually imposed of 25 years was valid as within statutory guidelines, the court's failure to impose 3 years of mandatory supervised release could be corrected by reducing the sentence to 22 years for the offense and adding a term of 3 years' mandatory supervised release to give defendant the "benefit of his bargain"); *People v. Stone*, 2013 IL App (1st) 111344 (allowed reconfiguration of defendant's sentence, not withdrawal of defendant's guilty plea, in a fully negotiated plea agreement for concurrent sentences on four counts of sexual assault and aggravated sexual assault, in violation of statute requiring defendant to serve consecutive sentences, where the aggregate imposed by the court was valid and consecutive sentences could be imposed and the same aggregate still achieved; defendant did not raise issue of failure to admonish of consecutive sentencing).

¶ 50 Even in fully negotiated pleas, however, the total aggregate sentence must conform to statutory guidelines in order for this remedy to be available. Reconfiguration is available only where the total aggregate agreed to by the defendant, the "bargain," can be enforced. Reconfiguration of a sentence is *not* allowed, even in fully negotiated pleas, where the aggregate sentence itself is void as not within sentencing guidelines because it is either over the maximum, under the minimum, or not authorized at all. In all such cases, the court must allow withdrawal of the plea, as the "benefit of the bargain" (aggregate sentence) cannot be achieved. See *People v. Pullen*, 192 Ill. 2d 36, 42-43 (2000) (defendant entered into a negotiated plea with an aggregate sentence of 30 years, when the correct maximum aggregate sentence under statute was 28 years; held defendant's sentence was void and the appellate court correctly vacated the defendant's plea); *White*, 2011 IL 109616, ¶ 31 (fully negotiated aggregate sentence could not be fulfilled because the defendant was subject to the mandatory firearm

---

[1]I do not discuss reconfiguration of sentences entered on convictions after a trial, as those cases are inapposite to guilty plea cases. Where there was a trial, the law is different and even an increase in sentence after conviction at trial is allowed because there is no violation of due process. See, *e.g.*, *People v. Garcia*, 179 Ill. 2d 55, 74 (1997) (supreme court held that when a sentence is void, an increased sentence following remand does not violate a defendant's due process right unless the defendant can demonstrate that the increase resulted from vindictiveness).

enhancement adding 15 years to his sentence; the plea was void and the defendant was given an opportunity to withdraw his plea; also, the defendant was not properly admonished);[2] *People v. Caban*, 318 Ill. App. 3d 1082 (2001) (the defendant was subject to a mandatory life term rather than the previous sentencing statute's lesser sentence agreed to in the defendant's fully negotiated plea agreement; the plea was void and allowed to be withdrawn); *People v. McRae*, 2011 IL App (2d) 090798 (fully negotiated plea of guilty in exchange for a sentence of 27 years was void due to the failure to impose the mandatory firearm enhancement).

¶ 51    The majority relies on *Donelson* but *Donelson* was a fully negotiated plea case, and the aggregate sentence entered complied with statutory guidelines. The individual sentences were void as not within the statutory guidelines. Because the *individual* sentences were void, *those* could be reconfigured and then added up to equal the valid aggregate sentence. *Donelson* is inapposite. *Donelson* did not recognize an "exception" to "*White*'s remedy of requiring withdrawal of both the guilty plea and sentence when the sentence is void," as the majority states. *Supra* ¶ 26. Rather, both *White* and *Donelson* apply the same above principles for fully negotiated plea cases, depending on whether the aggregate sentence agreed to was valid or not. In *Donelson*, the aggregate sentence imposed was valid and could be kept with reconfiguration of the individual sentences and sentencing structure to impose consecutive sentencing and still keep the same aggregate sentence imposed. In *White*, the fully negotiated aggregate sentence itself was void because the total aggregate sentence was under the minimum required, and so there could be no reconfiguration.

¶ 52    This case, however, is an open plea case. In an open plea the defendant does not agree to any aggregate sentence and does not know what his or her aggregate sentence will be. In open plea or partially negotiated plea cases, there is no "benefit of the bargain" remedy to reconfigure the individual sentences to add up to the aggregate agreed to (the "bargain") because there is no "bargain" in the first place regarding the aggregate sentence between the parties. Instead, the court sentences the defendant to the individual sentences, the sentencing structure, and the total sentencing aggregate. The sole reference is our sentencing statute. The individual sentences, the sentencing structure, and the total aggregate must comply with the statute.

¶ 53    In open plea or partially negotiated plea cases, there cannot be any reconfiguration where the aggregate sentence or sentencing structure is void, or where the aggregate sentence was not authorized. See *People v. Snyder*, 2011 IL 111382 (partially negotiated plea, no agreement as to specific aggregate number of years, admonished improperly as to restitution, and restitution was imposed but was not an authorized sentence and so the sentence was void; held, remedy is limited to allowing defendant the opportunity to withdraw the plea, though the court held that this is not what the defendant asked for); *People v. Dorethy*, 331 Ill. App. 3d 504 (2002) (partially negotiated plea, no agreement as to specific aggregate sentence, the aggregate

---

[2]Where there is only one offense, the "aggregate" sentence is the single sentence on the offense, and there is no discussion of reconfiguration. The result is the same. See *People v. Gregory*, 379 Ill. App. 3d 414 (2008) (imposition of probation on defendant's burglary conviction based on the fully negotiated plea agreement was void as defendant was required to be sentenced as a Class X felon; conviction was vacated and the defendant was permitted to withdraw the plea); *People v. Hare*, 315 Ill. App. 3d 606 (2000) (sentence of four years under the fully negotiated plea agreement was for less than the minimum six-year term required; the entire plea and the sentence were both void, and there was also failure to admonish; plea vacated).

sentencing structure was void where consecutive sentencing was required; held, the defendant's sentences were void and defendant was allowed to withdraw his plea; also, the defendant raised faulty admonishment); *People v. Schlabach*, 2012 IL App (2d) 100248 (aggregate sentencing structure was void because the sentences were required to be consecutive; defendant allowed the opportunity to withdraw his plea or have the sentence for driving under the influence corrected; also, the defendant was not properly admonished of mandatory consecutive sentencing, which was an additional basis to allow withdrawal of his plea).

¶ 54    Here, the aggregate sentence imposed is void, because consecutive sentencing was required. At the time of defendant's sentencing[3] in this case, section 5-8-4(a) of the Unified Code of Corrections provided:

> "The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, *or where the defendant was convicted of a violation of Section 12-13 or 12-14 of the Criminal Code of 1961*, in which event the court *shall* enter sentences to run *consecutively*. Sentences shall run concurrently unless otherwise specified by the court." (Emphases added.) 730 ILCS 5/5-8-4(a) (West 1994).

¶ 55    Section 12-13 is the provision for criminal sexual assault, and section 12-14 is the provision for aggravated criminal sexual assault. See 720 ILCS 5/12-13, 12-14 (West 1992). By the provision requiring that sentences "shall" run consecutively as specified, "[t]he legislature thus made consecutive sentences mandatory, and not merely discretionary, in the circumstances in which the provision applies." *People v. Bole*, 155 Ill. 2d 188, 196 (1993) (citing *People v. Lafferty*, 207 Ill. App. 3d 136, 137-38 (1990)).

¶ 56    The detailed factual basis of the plea in this case established that the offenses were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. In deciding whether a defendant's crimes were committed as part of a single course of conduct during which there was no substantial change in the nature of his criminal objective, we must determine whether defendant's acts were part of a course of conduct guided by an "overarching" criminal objective. *People v. Arrington*, 297 Ill. App. 3d 1, 5 (1998). We look to the record to make this determination. See *People v. Kagan*, 283 Ill. App. 3d 212, 220 (1996) (holding the record must support a finding of independent criminal motivation). See also *People v. Arna*, 168 Ill. 2d 107, 113 (1995) (concluding, after reviewing the evidence in the defendant's trial, that the offenses were committed in a single course of conduct and that there was no substantial change in the defendant's criminal objective from one shooting to the next). Where the conviction is entered pursuant to a plea agreement, we look to the factual basis of the plea to determine whether any sentencing enhancements were triggered. See *White*, 2011 IL 109616, ¶¶ 17, 27. "As the supreme court made clear in *White*, when the factual basis for a plea of guilty triggers a mandatory sentencing enhancement, neither the State, in plea negotiations, nor the court, at

---

[3]This same language of the statute was also in effect at the time defendant committed the offenses in 1992. 730 ILCS 5/5-8-4(a) (West 1992).

sentencing, may fashion a sentence that does not include the mandatory enhancement." *People v. McRae*, 2011 IL App (2d) 090798, ¶ 21 (citing *White*, 2011 IL 109616, ¶ 22).

¶ 57    Here, the facts stipulated to at the guilty plea hearing establish that the aggravated criminal sexual assault and criminal sexual assaults offenses were committed as part of a single course of conduct with no change in the nature of the criminal objective. Where a defendant commits the sexual assault crimes delineated in sections 12-13 and 12-14 of the Criminal Code as part of a single course of conduct, consecutive sentences under section 5-8-4(a) are required and any prior order imposing concurrent sentences is void. See *People v. Richmond*, 278 Ill. App. 3d 1042, 1048 (1996). "[C]ourts have held that separate acts of penetration during a single sexual assault are part of a single course of conduct." *People v. Guzman*, 276 Ill. App. 3d 750, 760 (1995), *appeal denied*, 169 Ill. 2d 577 (1996). Thus, consecutive sentencing was required.

¶ 58    Yet, instead of simply applying the law and correctly holding that the sentence in this case was void, the majority proposes reconfiguring the individual sentences for each conviction, as well as imposing a new aggregate sentence so long as it is within the range that was admonished by the court. But the *individual* sentences for each conviction of aggravated criminal sexual assault are *not* void and cannot be reduced in this manner. Where the individual sentences imposed are valid, they cannot be reduced or manipulated to achieve any reconfiguration. The maximum length of consecutive sentences which may be imposed on a defendant is determined with reference to the classification of the felonies committed. *People v. Pullen*, 192 Ill. 2d 36, 46 (2000) (citing 730 ILCS 5/5-8-4(c)(2), 5-8-2 (West 1994)). The character and classification of the felonies a defendant committed remain unchanged regardless of sentencing enhancements. *People v. Pullen*, 192 Ill. 2d 36, 46 (2000) (citing *People v. Olivo*, 183 Ill. 2d 339, 340-41 (1998), *People v. Thomas*, 171 Ill. 2d 207, 224 (1996), and *People v. Jameson*, 162 Ill. 2d 282, 290 (1994)).

¶ 59    The sentences of 17 years for each individual offense of aggravated criminal sexual assault were within guidelines for those individual offenses (6 to 30 years for each Class X) and were therefore valid. Aggravated criminal sexual assault is a Class X felony (720 ILCS 5/12-14(d) (West 2002)), and the sentencing range for a Class X felony is 6 to 30 years (730 ILCS 5/5-8-1(a)(3) (West 2002)). We have no authority to reduce the individual sentences in any reconfiguration because they are valid as within the 6- to 30-year range for a Class X felony. At the very least, two convictions for the two most serious offenses with sentences of 17 years each stand.

¶ 60    Because we cannot reconfigure the individual valid sentences, we cannot now impose consecutive sentencing and still wind up with the same aggregate sentence. It is a mathematical impossibility (17 years + 17 years ≠ 17 years).

¶ 61    Rather, mandatory consecutive sentencing applied, which required an aggregate sentence of 17 + 17 = 34 years. The court instead made those 17-year sentences concurrent, resulting in an aggregate sentence of only 17 years, half of what was required. The court's failure to apply consecutive sentencing to the otherwise valid sentences for the two most serious offenses rendered the whole sentence void.

¶ 62    There is no option of reducing valid individual sentences to reconfigure the sentencing structure to then add up to either the aggregate imposed or any new aggregate. If the individual sentences were valid, they stand. If a sentencing enhancement, or consecutive sentencing, applies, the sentencing structure must reflect this. If, after applying all statutorily required enhancements or consecutive sentencing, the final result required by statute is not (and cannot

be) equal to the aggregate that was actually imposed by the court, the entire sentence is void. That is exactly what happened in this case. Again, the sentence required was 17 + 17 = 34 years (consecutive). The court imposed a single concurrent sentence of 17 years.

¶ 63    To be clear, there is *no* remedy of reconfiguring a sentence to be within the range admonished by the court for any type of plea, if the admonishment itself was faulty and the aggregate itself is void. When it is clear the court misapprehended the law and the aggregate sentence total amount of years is wrong (*i.e.*, over/under minimum/maximum under guidelines), or if the total amount of aggregate years was within guidelines but the sentencing structure is wrong (*i.e.*, concurrent when consecutive required), then the entire sentence is void and the plea itself is void. There cannot be any reconfiguration of the sentences and there is no remedy other than withdrawal of the plea.

¶ 64    Our district has previously held that the "central holding in *White* was that a sentence not authorized by statute is void" and that this rule is not new but "has been consistently applied since *People v. Arna*, 168 Ill. 2d 107 (1995)." *People v. Cortez*, 2012 IL App (1st) 102184, ¶ 16. All other courts in our state also recognize all the above principles. The additional authority cited by Medrano, *People v. Deng*, 2013 IL App (2d) 111089, and *People v. Smith*, 2013 IL App (3d) 110738, recognize and follow these firmly established principles of law. The majority feels these authorities are inapplicable because the sentences in those cases were "less than the statutory minimum, making it impossible for the trial court to reconfigure [the] defendants' sentences to comply with statutory guidelines." *Supra* ¶ 32. I find it curious that the majority does not see that Medrano's sentence in this case is similarly below the statutory minimum required, because consecutive sentencing was required. I also find it curious that the majority notes that the defendants in both *Deng* and *Smith* were not properly admonished, yet inexplicably fails to note that Medrano in this case also was not properly admonished. *Deng* and *Smith* clearly apply to this case and the majority's attempt at a distinction falls flat at best and is disingenuous at worst. The courts in *Deng* and *Smith* properly followed *White* and permitted the defendants to withdraw their guilty pleas. The same should be done in this case under current precedent.

¶ 65    The majority also cites to *People v. Young*, 2013 IL App (1st) 111733, where a panel of this court held that the defendant in that case was estopped from raising his postconviction claim of a void sentence for failure to impose a mandatory firearm enhancement. *Young* acknowledges that the sentence in that case is "unable to be reformed" (*Young*, 2013 IL App (1st) 111733, ¶ 39), acknowledges that there is *no* Illinois case applying estoppel to void sentences (*Young*, 2013 IL App (1st) 111733, ¶ 42), and yet ignores our existing Illinois Supreme Court precedent and chooses instead to follow other jurisdictions.

¶ 66    First, as the appellate court, we have no authority to depart from our supreme court's precedent and follow other jurisdictions instead. "The appellate court lacks authority to overrule decisions of this [the Illinois Supreme] [C]ourt, which are binding on all lower courts." *People v. Artis*, 232 Ill. 2d 156, 164 (2009) (citing *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 551-52 (1983)). "It is fundamental to our judicial system that once our supreme court declares the law on any point, its decision is binding on all Illinois courts, and we cannot refuse to follow it, because we have no authority to overrule or modify supreme court decisions." *Du Page County Airport Authority v. Department of Revenue*, 358 Ill. App. 3d 476, 486 (2005).

¶ 67    Second, estoppel is inapplicable and wholly inappropriate in the context of void sentences for guilty pleas. As the panel in *Young* recognized, " 'The doctrine of judicial estoppel rests not upon due process concerns, but "upon public policy which upholds the sanctity of the oath and its purpose is to bar as evidence statements and declarations which would be contrary to sworn testimony the party has given in the same or previous judicial proceedings." ' " *Young*, 2013 IL App (1st) 111733, ¶ 40 (quoting *People v. Caballero*, 206 Ill. 2d 65, 80 (2002), quoting *Bidani v. Lewis*, 285 Ill. App. 3d 545, 549 (1996)). A sentence on a guilty plea is not an evidentiary "statement" or "declaration" to which estoppel applies. Collateral estoppel in the criminal context is a component of the double jeopardy clause. *People v. Carrillo*, 164 Ill. 2d 144, 151 (1995) (citing *Ashe v. Swenson*, 397 U.S. 436, 445-46 (1970)). "The doctrine of judicial estoppel prevents a party from assuming a position in a legal proceeding inconsistent with one previously asserted." *People v. Goestenkors*, 278 Ill. App. 3d 144, 148 (1996) (citing *People v. Gayfield*, 261 Ill. App. 3d 379, 385 (1994)). A "plea of guilty is a judicial admission of the truth of the act as charged and that, having entered his plea, defendant is estopped from reverting to his preplea assertion that he did not" commit the crime as charged. *People v. Goestenkors*, 278 Ill. App. 3d 144, 149 (1996). Our supreme court has noted that "[a]dditionally, unlike an acquittal, no issues are litigated in a guilty plea, thus rendering the issue preclusion of collateral estoppel inapplicable in this context." *People v. Carrillo*, 164 Ill. 2d 144, 151 (1995).

¶ 68    Judicial or collateral estoppel can be applied only to bar a defendant from changing his factual basis of his plea, as an evidentiary matter. It cannot be invoked as a tool to bar a defendant from raising a void sentence challenge or to excuse giving a defendant his due process right of correct admonishment as to the consequences of his guilty plea.

¶ 69    The only area in which estoppel may be applicable regarding sentencing is in the context of fully negotiated pleas, because there the defendant agrees to a specific sentence and is bound to that agreement, but only where the sentence is not void or, if void, can be reconfigured to give the benefit of the bargain. See *People v. Maltimore*, 268 Ill. App. 3d 532, 535 (1994) (noting that it has been held that a defendant is estopped from challenging a negotiated sentence on appeal) (citing *People v. Terneus*, 239 Ill. App. 3d 669 (1992), and *People v. Willer*, 132 Ill. App. 3d 63 (1985)). But here the analysis has been "benefit of the bargain" under a contract theory, not estoppel. The contract theory of fully negotiated plea agreements was announced by the Illinois Supreme Court in *People v. Evans*, 174 Ill. 2d 320 (1996), where the defendants were convicted and sentenced pursuant to negotiated pleas but then filed motions to reduce their sentences. Using contract analysis, the *Evans* court held that defendants who enter into negotiated pleas must move to withdraw their guilty pleas, rather than move to reduce their sentences. This problem was recognized long ago and Rule 604(d) was specifically drafted to address it. See *People v. Wilk*, 124 Ill. 2d 93, 106 (1988). But where a defendant files a motion to withdraw the guilty plea, rather than a motion to reduce the sentence, the contract analysis of *Evans* is inapplicable. *People v. Morgan*, 385 Ill. App. 3d 771, 777 (2008). "A motion to reconsider a sentence is fundamentally different from a motion to withdraw a guilty plea; the former seeks review of the sentence imposed, while the latter raises issues relating to the validity of the guilty plea." *People v. Maltimore*, 268 Ill. App. 3d 532, 536 (1994) (citing *People v. Jordan*, 209 Ill. App. 3d 983, 986 (1991)). This contract-type analysis is only where a defendant later wishes to renege on a negotiated plea and challenge the length of his or her

sentence, not where the sentence itself is void and a defendant challenges that void sentence and files a motion to *withdraw* his or her plea.

¶ 70    A fully negotiated plea is also fundamentally different from an open plea, which we have in this case. "Where a defendant enters a negotiated plea of guilty, he voluntarily accepts the sentence, even if it is in excess of the statutory minimum and thereby recognizes and admits that such sentence is fair and justified in light of his history and character and the nature of the circumstances of the offense." *People v. Braje*, 130 Ill. App. 3d 1054, 1066 (1985) (citing *People v. Whitehead*, 32 Ill. App. 3d 615, 616 (1975)). Even then, a plea will not always result in collateral estoppel of the issue of guilt even in negotiated guilty pleas, because the defendant is attempting to receive a reduced sentence. As our supreme court explained:

> "A decision to accept a plea is often the result of weighing a myriad of factors, the reduction of the charge and resulting sentence being a significant factor but only one of those factors. Because in the case of negotiated pleas it does not necessarily follow that the failure to deny reflects only a defendant's desire to receive a reduced sentence, for collateral estoppel purposes consideration of more than the fact of the 'admission' is required." *Talarico v. Dunlap*, 177 Ill. 2d 185, 195 (1997).

¶ 71    In the context of open guilty pleas there is no possible promissory estoppel, nor equitable estoppel, nor contract regarding the sentence, because the defendant does not agree to any specific sentence. When a defendant enters an "open" or "blind" plea, wherein the defendant pleads guilty without receiving any promises from the State in return, both the State and the defendant may argue for any sentence permitted by statute, and the trial court exercises its full discretion in determining the sentence to be imposed. *People v. Diaz*, 192 Ill. 2d 211, 218 (2000) (citing *People v. Evans*, 174 Ill. 2d 320, 332 (1996), and *People v. Lumzy*, 191 Ill. 2d 182, 185 (2000)).

¶ 72    However, a void sentence cannot be waived and a defendant is not "estopped" from raising it, for any type of plea. Even in fully negotiated pleas, if the sentence agreed to was void, the defendant is not estopped from challenging it. Our supreme court and our appellate courts, including our own district, have long consistently held, up until *Young* and the present case, that a defendant is *not* estopped from challenging a void sentence, in any type of plea, negotiated or open. See *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552, 556-58 (2002) (holding that estoppel did not apply in a negotiated plea where the sentence agreed to by the parties and imposed by the court was in violation of statutory requirement; amended the sentencing order to appropriately reduce the defendant's sentence). See also *People v. Lenoir*, 2013 IL App (1st) 113615; *People v. Cortez*, 2012 IL App (1st) 102184.

¶ 73    I note that in *Cortez* a panel of this district specifically held that it saw "no need to divert from the supreme court's decision in *White* where the cause was remanded to the trial court for the withdrawal of the defendant's guilty plea, if defendant chooses." *Cortez*, 2012 IL App (1st) 102184, ¶ 19 (citing *White*, 2011 IL 109616, ¶ 31). That panel also specifically rejected any "temporal gap" concerns raised by the State:

> "In response to the State's argument that allowing defendant to withdraw his guilty plea and potentially proceed to trial could cause prejudice to the State after so much time has elapsed since the plea was entered, we return to the distinguishing factors between those cases cited by the State where the plea at issue violated the defendants' due process rights because the defendants were not admonished regarding mandatory supervised release [citations], and the instant plea, which is unquestionably void. The

- 18 -

State does not cite to any cases instructing this court to consider the potential prejudice to the State if defendant decided to seek a trial upon remand following the withdrawal of his void plea." *Cortez*, 2012 IL App (1st) 102184, ¶ 21.

¶ 74 While I can understand how fashioning some type of remedy to cure the void sentence problem in cases where a defendant is claiming, after a long passage of time, that his sentence on his guilty plea is void because he should have received a *longer* sentence than the one he received is tempting, there is no support for the application of the principle of estoppel in this context.

¶ 75 I can understand the desire not to allow defendants, especially those who are convicted of heinous crimes such as Medrano, and on top of that 20 years later, the opportunity to withdraw their pleas due to a void sentence that occurred as a result of sentencing errors. But here it is not merely an error; the entire sentence and plea are both void. I considered all aspects of this case and precedent to determine any way we can comply with the law and somehow uphold Medrano's plea and reconfigure his sentence. Under current law, it cannot be done. The fact is that: (1) it is an open plea and the entire aggregate sentence is void and there is nothing that can be reconfigured; and (2) defendant was not admonished properly. Either one of these reasons, standing alone, dictates that the plea is also void and defendant *must* be allowed to withdraw his plea. Here we have *both* grounds present.

¶ 76 These are not points where there is room for disagreement. Precedent is clear and dictates the outcome of this case. Refusing to allow defendant to withdraw his plea and instead remanding to reconfigure *valid* individual sentences, and to *increase* defendant's aggregate sentence, despite faulty admonishment, is contrary to the Illinois Supreme Court's clear precedent, which dictates the opposite result of the majority's decision.

¶ 77 The fact that there is now a "temporal gap" problem should serve as impetus to trial courts and prosecutors to ensure that sentences are correct in the first place, and not serve as an excuse to ignore well-established law and trample the defendant's due process rights to give courts a "second bite at the apple" to impose a sentence the defendant was never advised of in entering his plea and forgoing his right to a trial.

¶ 78 I anticipate that the issues in this case before us will continue to arise on appeal in other cases. This particular defendant is currently serving a 90-year sentence on his other convictions in a separate case and has already exhausted all his appeals and postconviction remedies in that case. Regardless of the plea withdrawal in this case, even if the State is so prejudiced due to the passage of time that it cannot put on its case, this particular defendant will still remain in prison for the convictions in his other separate case. The current case is perhaps the most appropriate case to fully address these issues and provide more clear guidance for the criminal court judges, prosecutors, and defense attorneys so that these void sentence errors are prevented. Unfortunately, the majority not only misses this opportunity but factually misstates the record to propose violating defendant's rights and well-established law.

¶ 79 I do not disagree that the result under current precedent is problematic, but until the supreme court or the legislature changes the law, we must apply existing precedent. This is an issue which may be revisited by our supreme court, but under current law Medrano's sentence and plea are both void.

¶ 80 There are several ways this area of the law can be changed to address the problem. Perhaps our supreme court can fashion a remedy whereby such unauthorized sentences which failed to

impose mandatory enhancements are considered voidable, and defendants' pleas are not withdrawn if they do not wish to incur the more severe required sentencing, instead of void.

¶ 81 In *People v. Davis*, 156 Ill. 2d 149 (1993), our supreme court recognized three "element[s] of jurisdiction," without which a judgment is void: (1) personal jurisdiction; (2) subject matter jurisdiction; and (3) "the power to render the particular judgment or sentence." *Davis*, 156 Ill. 2d at 156. This third prong is the foundation of the void sentence doctrine. Since *Davis*, our supreme court "continues to adhere to this formulation of the voidness doctrine." *People v. Hubbard*, 2012 IL App (2d) 101158, ¶ 16. But I note that even in *People v. Whitfield*, 217 Ill. 2d 177 (2005), our supreme court discussed cases in other jurisdictions where courts noted that allowing a petitioner to withdraw his plea would be unduly prejudicial to the State, in which case, a defendant could be limited to the alternative remedy of having his or her sentence modified according to the circumstances of the case. See *Whitfield*, 217 Ill. 2d at 203-04 (discussing *James v. State*, 699 N.W.2d 723 (Minn. 2005); *United States v. Bowler*, 585 F.2d 851, 856 (7th Cir. 1978)).

¶ 82 It would make sense to say that an unauthorized sentence is voidable, instead of void, because defendants are given the "opportunity" to withdraw their plea; withdrawal of the plea is not directed.

¶ 83 It would also make sense to not allow defendants who received a sentence *less than* the required minimum the same opportunity to withdraw their plea, so long as the sentence imposed on the open plea is enforced and is not increased, despite the fact that a mandatory sentencing enhancement was not complied with. Even with improper admonishment, it would be difficult to argue prejudice if the sentence imposed remained the same. But, then again, some defendants may still argue that they would not have pled guilty had they known the actual true sentencing range and that, therefore, their guilty plea was still not "knowing" and voluntary.

¶ 84 Fashioning any different solution may mean that the void sentence doctrine would have to fall by the wayside. But this is an issue for our supreme court to revisit. As the appellate court, we simply do not have the authority to overrule our supreme court precedent. Our current precedent is clear; defendant's sentence and plea are both void.