# ILLINOIS OFFICIAL REPORTS

## Supreme Court

*People v. Donelson*, 2013 IL 113603

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CHARLES DONELSON, Appellant. |
| Docket No. | 113603 |
| Filed | March 21, 2013 |
| Rehearing denied | May 28, 2013 |
| Held <br><br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where a defendant who had entered into a fully negotiated plea agreement for concurrent terms claimed that it was void because consecutive sentences were required by statute, but where the maximum term which the parties had originally intended was clear, it was proper to order a contract reformation on remand which would correct the parties' mutual mistake by reconfiguring the sentences so as to impose consecutive terms which implemented that maximum sentence. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Lawrence Edward Flood, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Jessica D. Pamon, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, and Charles Donelson, *pro se*, for appellant.

Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz and Sheilah O'Grady-Krajniak, Assistant State's Attorneys, of counsel), for the People.

Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.
Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1    In this appeal, we consider the proper remedy where the State and the defendant, parties to a fully negotiated plea agreement, are mutually mistaken as to the manner in which sentences of imprisonment must be served, but otherwise agree upon the maximum number of years to be served. Faced with this issue, the appellate court acknowledged that consecutive sentencing was statutorily mandated, and in that respect the concurrent sentencing structure of the parties' plea agreement rendered defendant's sentencing void. 2011 IL App (1st) 092594, ¶ 9. However, the appellate court concluded that the plea agreement, "taken as a whole, is not contrary to statutory authority and thus not void," insofar as sentences could be fashioned, within statutory constraints, to effectuate the parties' intent, *i.e.*, that the defendant "receive a total of 50 years' imprisonment." 2011 IL App (1st) 092594, ¶ 18. Thus, the appellate court remanded this cause to the circuit court "to resentence defendant in accordance with both the plea agreement and the applicable statutes." 2011 IL App (1st) 092594, ¶ 22. We allowed the defendant's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)), and now affirm the judgment of the appellate court.

¶ 2                          BACKGROUND
¶ 3    Defendant, Charles Donelson, was charged, in indictment number 98 CR 11525, with first degree murder, home invasion, residential burglary, and aggravated criminal sexual assault. Defendant was charged separately, in indictment number 98 CR 11527, with aggravated criminal sexual assault. The cases were consolidated and proceeded to a jury trial on January 30, 2001. After opening statements, and commencement of the State's case in chief, the parties informed the court that they had reached a plea agreement.

¶ 4    The parties agreed that defendant would plead guilty to first degree murder and home

invasion, as charged in indictment number 98 CR 11525, and aggravated criminal sexual assault, under indictment number 98 CR 11527. It was further agreed that he would receive prison sentences of 55, 30 and 30 years, respectively, to be served concurrently.

¶ 5 The court admonished defendant regarding the rights he was giving up by pleading guilty. Defendant said he understood. The court advised defendant of the maximum sentences that could be imposed for each offense. Defendant again indicated he understood. The court confirmed that the proposed prison sentences—including a 55-year sentence of imprisonment for murder—met with defendant's expectations. Upon inquiry by the court, defendant responded that no one had forced him to plead guilty and no promises had been made to him other than the stated terms of the plea agreement.

¶ 6 The defendant then stipulated that the facts as stated in the prosecutor's opening statement would serve as the factual basis for the guilty plea. The court found a sufficient factual basis for the guilty plea and sentenced defendant in accordance with the parties' agreement.

¶ 7 On February 27, 2001, defendant filed a *pro se* motion to withdraw his guilty plea. On March 30, 2001, the circuit court denied the motion and defendant appealed. The State confessed error based on erroneous plea admonishments, and the appellate court remanded the case. *People v. Donelson*, No. 1-01-2127 (2002) (unpublished order pursuant to Supreme Court Rule 23).

¶ 8 On remand, defendant, by counsel, filed new motions in each case, "to withdraw the plea of guilty and vacate the sentence." Ultimately, on May 22, 2003, defense counsel announced an agreement by which defendant would withdraw his motions in exchange for the State's offer of a five-year sentence reduction on defendant's first degree murder conviction. The prosecutor confirmed the agreed sentence reduction, and added, without objection or disagreement: "As part of [the] agreement *** the defendant would withdraw the previously mentioned motions and not litigate that issue any further." The court questioned defendant as to his understanding of the agreement, and emphasized that only "one sentence" was being reduced, "first degree murder ***, the significant sentence, from 55 years to 50 years." Defendant indicated he understood and expressed his satisfaction with his attorney's performance. Pursuant to the parties' new agreement, the circuit court reduced defendant's 55-year sentence for murder to 50 years. Defendant's 30-year sentences were unaffected.

¶ 9 A little over two months after the parties' May 2003 agreement, and the resulting reduction of defendant's murder sentence, a docket entry, dated August 5, 2003, acknowledges receipt of yet another motion filed by defendant, this one for a further "reduction of sentence." In his motion, defendant referenced only his 50-year sentence. A subsequent docket entry indicates the motion was heard and denied on August 8, 2003. A late notice of appeal, to which defendant subscribed, evinces defendant's attempt to appeal from that judgment. He cited May 22, 2003, as the date of his sentence, and the only sentence specified as cause for concern was his 50-year sentence for murder. An entry of record, dated December 1, 2003, states: "Late Notice of Appeal Denied."

¶ 10 Defendant filed a *pro se* postconviction petition on February 18, 2005. In that petition, defendant referenced only his 50-year sentence for murder. He generally asserted vague

claims of ineffective assistance of counsel, with equally amorphous flourishes of constitutional jargon; however, he did make one specific claim: "I was promised 30 years and I didn't receive it. I was told by counsel that the State would allow me to file a reduction of sentence and if I like to file a withdraw motion of guilty plea, appeal the motion to reduce sentence." A record sheet of the circuit clerk states that postconviction relief was "denied" on March 15, 2005. The relevant entries use the phrases "successive petition" and "frivolous and patently without merit." In this portion of an obviously jumbled and fragmentary record on appeal, a partial transcript of a March 30, 2001, hearing appears, wherein defendant's attorney as of that date told the judge *she* had offered the State 30 years in defendant's plea negotiations, but *the State* had never offered defendant the opportunity to plead guilty to murder in exchange for 30 years. The prosecutor confirmed that, stating: "Absolutely not, Judge. In fact, this would have been a case where we had sought death." This portion of the transcript bears a stamped filing date of February 18, 2005, suggesting that it was considered contemporaneously with defendant's postconviction petition.

¶ 11      In a notice of appeal, file stamped April 26, 2005, defendant lists "murder-sexual assault" as the offenses of which he was convicted. The only sentence listed is defendant's 50-year sentence of imprisonment. It is unclear what transpired on appeal. Docket entries indicate that an appellate court mandate was filed with the circuit court on January 3, 2007, and the appeal was dismissed, pursuant to "appellant's motion" on January 11, 2007.

¶ 12      On April 23, 2009, defendant submitted, for filing, a *pro se* motion for leave to file a petition for relief from judgment, pursuant to section 2-1401(f) of the Code of Civil Procedure (735 ILCS 5/2-1401(f) (West 2008)), along with the petition itself. Defendant challenged various aspects of his guilty plea, suggesting that he received ineffective assistance of trial counsel, that the trial court failed to comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2006), and that his plea was involuntary. Although he claimed the judgment evincing his convictions and sentences was void for sundry reasons, improper concurrent sentencing was not one of them. The circuit court dismissed defendant's petition on July 17, 2009. On July 27, 2009, defendant filed a motion to reconsider the dismissal of his petition for relief from judgment, which the circuit court denied on August 14, 2009. The ensuing notice of appeal identifies defendant's "sentence" as "50 yrs. concurrent."

¶ 13      On appeal, defendant contended that concurrent sentencing rendered his sentences *and* his plea void. 2011 IL App (1st) 092594, ¶ 7. As indicated at the outset of this opinion, the appellate court agreed that the sentencing structure was void, insofar as the sentences were ordered to run concurrently (2011 IL App (1st) 092594, ¶ 9); however, the court concluded that the parties' agreement was not void, as the intent of the parties—that defendant serve an agreed number of years in prison—could be implemented by resentencing defendant "in accordance with both the plea agreement and the applicable statutes." 2011 IL App (1st) 092594, ¶¶ 18, 22. The appellate court so ordered.

¶ 14                                   ANALYSIS

¶ 15      Contrary to the position it took in the appellate court, the State now concedes that defendant's concurrent sentences were improper. As the appellate court correctly observed:

"A conviction of aggravated criminal sexual assault (720 ILCS 5/12-14 (West 1998)) triggers mandatory consecutive sentences where the defendant is convicted of multiple offenses whether the offenses were committed during a single course of conduct (730 ILCS 5/5-8-4(a) (West 1998)) or whether the offenses were committed during separate courses of conduct (730 ILCS 5/5-8-4(b) (West 1998)). *People v. Harris*, 203 Ill. 2d 111, 116-17 (2003)." 2011 IL App (1st) 092594, ¶ 9. A sentence, or portion thereof, that is not authorized by statute is void. *People v. Thompson*, 209 Ill. 2d 19, 23 (2004). Hence, the sentencing structure employed in defendant's case renders his sentences void to the extent they were ordered to be served concurrently.

¶ 16    Defendant, with the refrain "void is void," and the insistence that our recent decision in *People v. White*, 2011 IL 109616, controls the outcome here, contends that finding should end our inquiry, that this court should "vacate [defendant's] plea, and remand the cause for further proceedings, during which [defendant] and the State can attempt to reach a new plea agreement or proceed to trial." To that end, defendant suggests that he negotiated for *specific* sentences, that this was not a situation where he pled for a sentencing cap. Apparently unable to posit any additional arguments on his *own* behalf, defendant opines—anticipating and opposing implementation of the appellate court's remedy—"the trial court should not be allowed to unilaterally modify the sentences and deprive the State of the benefit of its bargain, *** rather the plea should be withdrawn and the parties should be returned to their positions prior to imposition of the void sentence."

¶ 17    The State argues that the appellate court's remedy would give the defendant the essential term of *his* bargain—"a total period of incarceration of 50 years"—and, not surprisingly, the State appears to be unconvinced that withdrawal of defendant's guilty plea would inure to *its* benefit. The State seems more concerned that it "would be prejudiced if it were forced to attempt to re-try the case more than 14 years after defendant committed first-degree murder and aggravated criminal sexual assault." The State notes that "plea agreements, like all contracts, occasionally include mistakes of law or fact," and suggests that the "equitable solution" reached by the appellate court in this case makes way for reformation of the parties' agreement in such a way as to give both parties the benefits of their bargain. We agree with the State.

¶ 18    This court has recognized that the plea-bargaining process, and negotiated plea agreements, are vital to, and highly desirable for, our criminal justice system. *People v. Evans*, 174 Ill. 2d 320, 325 (1996). Plea bargaining leads to prompt disposition of cases, preserves finite judicial and financial resources, and allows the State to focus its prosecutorial efforts where they are most needed. *People v. Boyt*, 109 Ill. 2d 403, 416 (1985). When properly administered, plea bargaining is to be encouraged. *Evans*, 174 Ill. 2d at 325. As we have frequently stated, and recently observed in *People v. Hughes*, 2012 IL 112817, ¶ 68, a plea agreement has often been compared to an enforceable contract, and this court has applied contract law principles in appropriate circumstances. See also *People v. Absher*, 242 Ill. 2d 77, 87-88 (2011); *Evans*, 174 Ill. 2d at 326-27.

¶ 19    Where a plea rests in any significant degree upon a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration for the plea, that feature of the agreement must be fulfilled. *Hughes*, 2012 IL 112817, ¶ 68. The principal

inquiry, in that respect, is whether the defendant has received the benefit of his bargain. *Hughes*, 2012 IL 112817, ¶ 69. Though rarely emphasized in this court's jurisprudence, the other half of the contractual equation is the benefit of the bargain accruing to the State, a consideration that looms larger as the temporal gap between the commission of the offenses and attempts to withdraw the guilty plea widens.

¶ 20    Here, the defendant and the State were mistaken insofar as they believed that defendant could be sentenced to concurrent terms of imprisonment for murder, home invasion, and aggravated criminal sexual assault. However, pursuant to contract principles, contracting parties' mutual mistake may be rectified by recourse to contract reformation (*Czarobski v. Lata*, 227 Ill. 2d 364, 371-72 (2008)), where they are in actual agreement and their true intent may be discerned (*Wheeler-Dealer, Ltd. v. Christ*, 379 Ill. App. 3d 864, 869 (2008)).

¶ 21    The State argues that defendant would receive the benefit of *his* bargain if, upon remand, he is resentenced to consecutive sentences totaling 50 years in prison. The appellate court's disposition explained how that could be accomplished within the constraints of consecutive sentencing statutes (see 2011 IL App (1st) 092594, ¶ 18 ("defendant could properly receive a total of 50 years' imprisonment in light of the sentencing ranges of 20 to 60 years for first degree murder and 6 to 30 years for the other two offenses")) and it prescribed that remedy on remand.

¶ 22    The procedural history of this case does in fact indicate that defendant's concern—apart from limiting his criminal convictions to three—was to set an upper limit on the time he would spend in prison. Defendant originally bargained for a 55-year sentence of imprisonment on his murder conviction, and 30-year sentences on his convictions for aggravated criminal sexual assault and home invasion. The 30-year sentences represented the maximum nonextended-term sentences for those offenses.

¶ 23    On February 27, 2001, defendant embarked upon the first of what would be successive attempts to withdraw his guilty plea and either reduce his "sentence" or vacate his sentences. When that first action resulted in an appellate court remand to the circuit court, defendant ultimately agreed to withdraw a motion to "withdraw the plea of guilty and vacate the sentence" in exchange for a five-year reduction of his lengthiest sentence, *i.e.*, the sentence everyone believed would dictate defendant's maximum term of incarceration. Defendant's 30-year sentences were unaffected. When—in contravention of the understanding that the sentence reduction would put an end to the litigation—defendant almost immediately filed another motion for "reduction of sentence," defendant referenced only his 50-year sentence. When that proceeding came to naught, defendant's 2005 resurrection of the matter via postconviction proceedings again referenced only his 50-year sentence. The record belied defendant's allegation that he "was promised 30 years" and, in the end, defendant was denied postconviction relief. His notice of appeal from that judgment lists only one sentence of imprisonment—50 years. Finally, when defendant's petition for relief from judgment was denied by the circuit court, and defendant appealed that ruling, the ensuing notice of appeal identified defendant's "sentence" as "50 yrs. concurrent."

¶ 24    In short, nothing in the defendant's actions, or the procedural history of this case, evinces any concern over the two 30-year sentences defendant received. Most notably, when he

negotiated for a reduction of his sentence, he did so only with respect to the greater sentence, the sentence everyone believed would determine the amount of time defendant would spend in prison. Clearly, that was defendant's concern in negotiations, from start to finish.

¶ 25    Defendant's bald assertion that he negotiated for *specific* sentences—that this was not a situation where he pled for a sentencing cap—rings hollow. He has not identified any consequence attributable to the length of these shorter sentences in this context. At the time the parties negotiated the plea agreement, their understanding was that the 30-year sentences would run concurrently with the longer 55-year sentence, which was later reduced to 50 years. Whether the lesser sentences were for six years, or 30, the parties clearly believed they would not affect the maximum amount of time defendant would spend in prison. Moreover, the lesser, 30-year, sentences for which he "negotiated" represented the *maximum* nonextended-term sentences for the attendant offenses. These were the "specific sentences" defendant sought for home invasion and aggravated criminal sexual assault. His conduct, in the course of this litigation, indicates they did not matter to him at all.

¶ 26    We turn to defendant's misplaced reliance upon *White*. In *White*, defendant had not been properly admonished about the applicable sentencing range when he entered into a plea agreement with the State, nor could the prison term to which he agreed be legally imposed, as it was inconsistent with statutory mandates. When White entered into a plea agreement for 28 years' imprisonment, he was correctly advised of the sentencing range for first degree murder—20 to 60 years' imprisonment—however he was not told about the mandatory 15-year enhancement for use of a firearm. See 730 ILCS 5/5-8-1(a)(1)(d)(i) (West 2004). As this court noted, because of the mandatory sentencing enhancement, "defendant was subject to the mandatory minimum sentence of 35 years' imprisonment, which is more than the 28 years he received." *White*, 2011 IL 109616, ¶ 19. Thus, the inadequate admonishment led to a sentence that could not stand as it was inconsistent with statutory requirements. In short, the plea agreement could not be implemented as White could not receive the 28-year sentence for which he bargained. Given those circumstances, this court ordered the cause "remanded to the circuit court with directions to allow defendant to withdraw his guilty plea and proceed to trial, if he chooses." *White*, 2011 IL 109616, ¶ 31.

¶ 27    The obvious differences are these: (1) this defendant does not claim that he was improperly admonished regarding sentencing ranges for individual sentences when he agreed to a 50-year sentence; (2) defendant's sentence can be reconfigured, consistently with statutory mandates, in such a way as to give him the benefit of his bargain.

¶ 28    When a defendant's guilty plea " 'rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " *Hughes*, 2012 IL 112817, ¶ 68 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). Here, it can and will be fulfilled.

¶ 29    For the foregoing reasons, we affirm the judgment of the appellate court, remanding this cause to the circuit court with directions that the court resentence defendant in accordance with both the plea agreement and applicable statutes.

¶ 30    Affirmed.