NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170673-U

NO. 4-17-0673

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 11, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macoupin County |
| SHAWN C. MANLEY, | ) | No. 13CF137 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Joshua A. Meyer, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Postconviction counsel was not required to amend defendant's *pro se*
postconviction petition because the allegations contained in the *pro se* petition
were patently without merit.

¶ 2        In August of 2017, the trial court dismissed defendant's amended petition for

postconviction relief. On appeal, defendant argues he did not receive reasonable assistance from

postconviction counsel pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) because

postconviction counsel's amendments to defendant's *pro se* petition failed to adequately present

his contentions of a constitutional violation. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        On September 16, 2013, the State charged defendant with aggravated battery (720

ILCS 5/12-3.05(e)(1) (West 2012)) (Count I) and unlawful possession of a weapon by a felon (720

ILCS 5/24-1.1(a) (West 2012)) (Count II), arising out of an incident that occurred on September 15, 2013.

¶ 5		On April 14, 2014, defendant pleaded guilty to aggravated battery as part of a fully negotiated plea agreement. During the plea hearing, the State recited the terms of the agreement, stating defendant would be pleading guilty to aggravated battery and receive a prison sentence of 11½ years, and Count II would be dismissed. Plea counsel confirmed the agreement. The State then presented a factual basis for defendant's plea of guilty to aggravated battery as follows:

> "If this were to go to trial, the State would call Detective Brian Lawton of the Carlinville Police Department, who would testify that on September 15, 2013 that [defendant] violated the [a]ggravated [b]attery statute of Illinois, in that he discharged a firearm and caused bodily harm to [Kaleb Lovelace (Lovelace)] and that [Lovelace] was struck by a bullet in the ankle all occurring in Macoupin County."

Upon the trial court's inquiry, plea counsel stipulated to the State's factual basis.

¶ 6		The trial court then admonished defendant pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). In response to the court's questions, defendant acknowledged he had discussed the plea agreement with his counsel and was satisfied with his services. Defendant indicated he was pleading guilty voluntarily and that the agreement was in his best interest. He further acknowledged his right to a trial before a judge or jury. The court found defendant's guilty plea was knowing and voluntary and sentenced him in accordance with the negotiated plea agreement.

¶ 7		On March 24, 2017, defendant *pro se* filed a petition for postconviction relief

pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). In his postconviction petition, defendant alleged plea counsel was ineffective for failing to "conduct any investigation into self-defense." Defendant alleged on the date of the incident, he went to a house where he knew he could find Lovelace, with whom he had recently quarreled, in order to amicably resolve a dispute between them. The quarrel between defendant and Lovelace arose when Lovelace entered defendant's yard and threatened defendant's son. According to defendant, after he arrived at Lovelace's home, "[Lovelace] came out of the house with a baseball bat in a[n] aggressive and threatening manor [*sic*] at which time [defendant] retreated to [his] auto but [Lovelace] ke[pt] threatening and advancing." Defendant claimed that he retrieved a handgun from his car, "fired a couple of 'warning shots' into the air," and, only after "[Lovelace] continued to advance and [defendant] *** felt in fear of great bodily harm or death," did he fire his gun at Lovelace.

¶ 8                In support of his claim that plea counsel was ineffective for failing to "conduct any investigation into self-defense," defendant alleged plea counsel "failed to obtain [Lovelace's] police records of arrests and convictions" even though defendant had "repeatedly requested [plea] counsel to obtain these records specific[ally] the sex offenses and violent charges." According to defendant, "[t]hese charges would have shown into [defendant]'s state of mind." Defendant alleged plea counsel also failed to "obtain the phone/text records of the parties involved" which would have "shown [defendant] did not threaten anyone and was not the aggressor in this matter, and had repeatedly requested a peaceful resolution." Defendant alleged plea counsel "failed to interview [defendant's son] *** and Dana Manley [defendant's wife] to substantiate that [Lovelace] had entered the Manley[s'] yard and threatened [his] child," thus leading to the dispute between defendant and Lovelace. Defendant further alleged that plea counsel failed to "inform[ ]

[him] that all three GSR (gun shot residue) [tests] were negative," which, according to defendant, would "substantiate[ ] the self-defense claim that [defendant] was outside of the auto, thus in danger, when the shots were fired." Finally, defendant alleged plea counsel failed to "contact[ ] Macoupin County Housing Authority to investigate that *** [Lovelace] was barred from Housing Authority property for past behavior." Defendant alleged that he was prejudiced by plea counsel's deficient performance.

¶ 9        In his *pro se* postconviction petition, defendant additionally alleged he was denied the benefit of his plea bargain with the State in that he "entered into a plea agreement with the understanding of a reduced charge against Dana Manley, at 50% or day for day to apply and that she [was] eligible to receive earned good conduct credits." According to defendant, the State "breached this agreement in that Dana Manley was not eligible for earned good conduct credits."

¶ 10       Defendant attached an affidavit to his *pro se* postconviction petition verifying the facts he alleged. Defendant also attached copies of Lovelace's criminal records and a Department of Corrections sentence calculation worksheet for Dana Manley.

¶ 11       The trial court determined defendant's *pro se* petition "met [its] initial burden and surpasses the first stage" and appointed postconviction counsel.

¶ 12       On June 1, 2017, defendant, through postconviction counsel, filed an amended postconviction petition. The amended postconviction petition restated the allegations contained in defendant's *pro se* petition but in less detail. Postconviction counsel also filed a certificate verifying his compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). The State subsequently filed a motion to dismiss defendant's amended postconviction petition, arguing the record positively rebutted defendant's claims plea counsel was ineffective and defendant did not

- 4 -

receive the benefit of his bargain.

¶ 13       On July 26, 2017, the trial court conducted a hearing on the State's motion to dismiss defendant's amended postconviction petition. The court granted the State's motion to dismiss, finding defendant failed to make a substantial showing of a constitutional violation.

¶ 14       This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16       On appeal, defendant argues he did not receive reasonable assistance from postconviction counsel pursuant to Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) because postconviction counsel's amendments to defendant's *pro se* petition failed to adequately present his contentions of a constitutional violation. We find that defendant is not entitled to relief because his *pro se* allegations were patently without merit.

¶ 17       A defendant commences a postconviction proceeding under the Act by filing a petition for relief in the trial court. 725 ILCS 5/122-1(b) (West 2016). Once a postconviction petition is filed, it undergoes a three-stage adjudication process. *People v. Harris*, 224 Ill. 2d 115, 125, 862 N.E.2d 960, 967 (2007). When a postconviction petition is not dismissed at the first stage, it advances to the second stage. *Id.* at 126. "The second stage of postconviction review tests the legal sufficiency of the petition." *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767. At the second stage of postconviction proceedings, the petitioner must make "a substantial showing of a constitutional violation." *Id.*

> "Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or 'show' a constitutional violation. *** [T]he substantial showing of a constitutional violation

- 5 -

that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief." (Emphasis and internal quotation marks omitted.) *Id.*

¶ 18       The Act provides that at the second stage in a postconviction proceeding, the trial court "shall appoint counsel if satisfied that the petitioner has no means to procure counsel." 725 ILCS 5/122-4 (West 2016). The Act "do[es] not guarantee that [a petitioner] will receive the same level of assistance that the Constitution guarantees to defendants at trial." *People v. Owens*, 139 Ill. 2d 351, 364, 564 N.E.2d 1184, 1189 (1990). Rather, petitioners are entitled only to the level of assistance required by the Act, that is, "a reasonable level of assistance." *People v. Suarez*, 224 Ill. 2d 37, 42, 862 N.E.2d 977, 979 (2007).

¶ 19       To ensure reasonable assistance is provided to postconviction petitioners, Illinois Supreme Court Rule 651(c) "imposes specific duties on postconviction counsel." *Id.* Rule 651(c) requires postconviction counsel to certify that he "has consulted with petitioner *** to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). "Counsel's responsibility is to adequately present those claims which the petitioner raises." (Emphasis omitted.) *People v. Davis*, 156 Ill. 2d 149, 164, 619 N.E.2d 750, 758 (1993). Although postconviction counsel is obligated to adequately present defendant's claims, "[i]f amendments to a *pro se* postconviction petition would only further a frivolous or patently nonmeritorious claim, they are not 'necessary' within the meaning of [Rule 651(c)]." *People v.*

- 6 -

*Greer*, 212 Ill. 2d 192, 205, 817 N.E.2d 511, 519 (2004). A claim is frivolous and patently without merit if it has "no arguable basis either in law or in fact, relying instead on an indisputably meritless legal theory or a fanciful factual allegation." (Internal quotation marks omitted.) *People v. Boykins*, 2017 IL 121365, ¶ 9, 93 N.E.3d 504. "An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *People v. Hodges*, 234 Ill. 2d 1, 16, 912 N.E.2d 1204, 1212 (2009).

¶ 20        Where, as here, a defendant enters a plea of guilty, he forfeits his right to later challenge most errors that may have occurred prior to entry of his guilty plea because "a voluntary guilty plea waives all non-jurisdictional errors or irregularities, including constitutional ones." *People v. Townsell*, 209 Ill. 2d 543, 545, 809 N.E.2d 103, 104 (2004). The principle behind this rule was expressed by the Supreme Court as follows:

> "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

However, a defendant may collaterally challenge the constitutionality of his guilty plea either by claiming that he did not receive the benefit of the bargain he made with the State or by alleging that the plea of guilty was not made voluntarily or with full knowledge of the consequences. *People v. Whitfield*, 217 Ill. 2d 177, 183-84, 840 N.E.2d 658, 663 (2005). The Supreme Court has found that:

"A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, [citation] or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense." *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).

¶ 21    In light of the above, we must examine the effect of defendant's guilty plea on the viability of his claim that plea counsel was ineffective for failing to "conduct any investigation into self-defense." According to *Whitfield*, defendant must establish his guilty plea was not entered into voluntarily in order to avoid a forfeiture of any claimed error preceding his guilty plea.

¶ 22    In the instant case, the voluntary nature of defendant's guilty plea is amply demonstrated by the record. Defendant's responses to the trial court's questions at the plea hearing confirm that he understood the charge he was pleading guilty to, the minimum and maximum penalties, his right to plead not guilty, his right to a bench trial or jury trial, and that at a trial he could present witnesses on his behalf. Defendant's *pro se* postconviction petition contained no allegation, either express or implied, that he did not understand the constitutional protections he was giving up, or that he was misled or misadvised by plea counsel. Defendant did not, for example, allege plea counsel advised him that self-defense was not an available defense to a charge of aggravated battery or that the evidence he claimed plea counsel should have obtained and reviewed would have been inadmissible at trial.

¶ 23 Even assuming, *arguendo*, defendant had claimed that his guilty plea was not voluntary because he was unaware of a possible self-defense claim, such a claim would be patently without merit as it would be completely contradicted by the record. Based on his *pro se* petition, defendant was fully aware of all the facts he claims plea counsel failed to investigate. In his *pro se* petition, defendant claimed plea counsel should have obtained Lovelace's criminal history and phone and text records "of the parties involved," should have interviewed defendant's son and wife, should have reviewed the results of the gunshot residue test with him, and should have contacted the Macoupin County Housing Authority to learn about Lovelace's "past behavior." However, none of this potential evidence was unknown to defendant at the time he entered his guilty plea. In his *pro se* petition, defendant alleged he "repeatedly requested" plea counsel obtain Lovelace's criminal records, "specific[ally] the *** violent charges," indicating that he was aware of Lovelace's criminal history. Further, as defendant is one of "the parties" whose phone and text records plea counsel allegedly failed to obtain, defendant presumably knew what was contained in those records. Similarly, as defendant acknowledged in his petition, had plea counsel interviewed defendant's son and wife, they would only have "substantiate[d] that [Lovelace] had entered the Manley[s'] yard and threatened [his] child," a fact defendant obviously knew given that he alleged this act by Lovelace precipitated the dispute between them. Further, even if plea counsel had reviewed the gunshot residue test with defendant, it would only have supported what defendant already claimed: that he was "outside of the auto *** when the shots were fired."

¶ 24 The record shows defendant entered his guilty plea fully aware of the nature of the constitutional protections he was waiving and the nature of the charge against him. The record further shows defendant entered his guilty plea aware of Lovelace's criminal history, the parties'

phone and text records, the fact his son and wife were witnesses to his first altercation with Lovelace, and the gunshot residue test. Accordingly, any assertion by defendant that his plea was entered involuntarily would have been patently without merit.

¶ 25    We now turn to defendant's contention that he "entered into a plea agreement with the understanding of a reduced charge against Dana Manley *** and that she [was] eligible to receive earned good conduct credits" to determine whether he was arguably denied the benefit of the bargain he made with the State. " '[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " *People v. Hughes*, 2012 IL 112817, ¶ 68, 983 N.E.2d 439 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). "The principal inquiry, in that respect, is whether the defendant has received the benefit of his bargain." *People v. Donelson*, 2013 IL 113603, ¶ 19, 989 N.E.2d 1101.

¶ 26    Here, the record rebuts any claim by defendant that he entered his guilty plea in reliance on the State's agreement to reduce a charge against Dana Manley or that she be eligible to receive good conduct credit. The complete terms of defendant's plea agreement were set forth during the plea hearing:

"MS. WATSON [(STATE'S ATTORNEY)]: We have a negotiated plea to present to you in 13-CF-137, Shawn C. Manley. On Count I, [defendant] would be pleading guilty to [a]ggravated [b]attery and it's a Class X felony with an 11 year sentence, I'm sorry, 11 years 6 month sentence with three years MSR. Your Honor, he would be given credit for time in custody from October the 17th, 2013 to today's date, which is 180 days. In addition to this, this particular sentence under this statute

holds with it a sentence where [defendant] shall serve 85 percent of his term. In addition to that, we would be asking for court costs and restitution in the amount of $4,637.20. There would be no fine. And in addition to that, Your Honor, the State has indicated that we would agree and submit to the jail that he not be taken to the Department of Corrections until after he has a visit on Wednesday of this week. He would not be getting any type of furlough, just that there is visiting hours on Wednesday and that he be allowed to have his visiting hours as they typically would have over at the jail. And Count II is dismissed per the plea. May I approach?

THE COURT: You may. Mr. Bellm [(defense attorney)], do you concur?

MR. BELLM: Yes, Your Honor. That is our understanding of the negotiated agreement."

The only mention in the record of a reduced charge against Dana Manley is an acknowledgment by the State during the postconviction proceedings that, as part of the State's plea agreement *with Dana Manley*, she would plead guilty to a reduced charge in her case. The record clearly rebuts defendant's contention that *his* plea agreement was somehow conditioned on the resolution of the charges against his wife. Accordingly, defendant's assertion that he did not receive the benefit of his bargain with the State is patently without merit.

¶ 27 Because the record affirmatively refutes any claim by defendant that he did not enter his guilty plea voluntarily or that he did not receive the benefit of his bargain with the State, his guilty plea served to waive all non-jurisdictional errors. Therefore, we find his *pro se* postconviction petition was patently without merit and postconviction counsel had no obligation under Rule 651(c) to amend it.

¶ 28                          III. CONCLUSION

¶ 29          For the reasons stated, we affirm the trial court's judgment.

¶ 30          Affirmed.