2022 IL App (1st) 192065-U

SIXTH DIVISION
June 17, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 98 CR 11527 |
| | ) | |
| CHARLES DONELSON, | ) | |
| | ) | Honorable |
| Petitioner-Appellant. | ) | Lawrence Flood, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE PIERCE delivered the judgment of the court.
Justices Harris and Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err when it did not consider the merits of defendant's motion to withdraw his guilty plea.

¶ 2    Defendant, Charles Donelson, pled guilty to first-degree murder and home invasion under

indictment 98 CR 11525 and aggravated criminal sexual assault under indictment 98 CR 11527. He now appeals and argues that the trial court erred when it did not consider his motion to withdraw his guilty plea after the cause had been remanded to the trial court for Rule 605(b) admonishments. For the following reasons, we affirm the judgment of the trial court.

¶ 3                                BACKGROUND

¶ 4     Defendant was originally charged under indictment number 98 CR 11525 with the first-degree murder of Matthew Flowers; home invasion; the aggravated criminal sexual assault of Sarah Tyler, Flowers' girlfriend; and residential burglary. Defendant was also charged with another count of aggravated criminal sexual assault against Tyler in indictment number 98 CR 11527. The cases were consolidated and on January 30, 2001, the case proceeded to a jury trial.

¶ 5     The assistant state's attorney (ASA) presented her opening statement, which explained, in relevant part: Matthew Flowers and Sarah Tyler lived at 534 East 36th Place, with roommate Andre Osborne. Defendant also lived in the complex, a couple floors away, and occasionally sold Matthew cocaine. On March 27, 1988, Matthew owed defendant $5. On that night, defendant came to their apartment while Matthew and Sarah were asleep, pounding on the door. When Matthew answered the door, defendant demanded his money. Sarah heard a "commotion" and when she went to see what was going on, defendant shoved the door in her face. Shortly after, defendant came "tearing" into the bedroom, saying "where is the damn money, I want my money, and I want it now." When defendant did not find any money, he left, telling Matthew and Sarah he would be back.

¶ 6    Defendant returned later that night with "five or six" people, and they had a bat. They dragged Andre out of his room. Defendant told one of the people to give Matthew "a few whacks" in the mouth and they punched him. Sarah was in the bedroom at the time but heard the commotion. She later saw that both Matthew and Andre had been beaten.

¶ 7    The next morning, Andre went to work, and Matthew went to the blood bank to sell blood to pay his debt. At about 10:00 a.m., Sarah was in bed when she heard a knock on the door. She saw defendant through the peephole. She told defendant that Matthew was not home but when she opened the door "a crack," defendant pushed his way inside with a gun pointed at her. After defendant went through the apartment, he told Sarah "there's a way you can help your boyfriend" and rubbed the gun "up and down her body." Defendant then sexually assaulted Sarah at gunpoint.

¶ 8    Three or four hours later, Matthew and Andre returned home. Andre had his friend Derrick Ellis with him. Andre told Matthew and Sarah he was going to stay with his mother for a few days and tried to persuade Sarah to come with him. Sarah began packing a bag, but defendant returned. Matthew went out into the hallway to speak with him, but defendant pushed his way back inside the apartment, now with Matthew at gunpoint. Andre tried to negotiate with defendant and pay Matthew's debt, but defendant refused. After a while, defendant allowed Andre and Derrick to leave.

¶ 9    Defendant forced Sarah to tie Matthew up and then find something to tie herself up with; when she was unable to find anything, he told her, "I should just kill you all." Andre returned to the apartment to try to calm defendant down and defendant allowed Andre inside. Some of

defendant's friends and his brother were also in the apartment. At one point, defendant's brother tried to "talk him down" but defendant told them "this is my gig" and ordered everyone except Sarah and Matthew out of the apartment. Defendant forced Matthew and Sarah to strip and then forced Sarah onto the bed. Defendant forced Matthew on top of Sarah with defendant's gun to his head and told Matthew, "you better f\*\*k her or I'll shoot your a\*\*." Matthew attempted to comply but was unable, at which point defendant told them, "I've seen better acting on television, you people are pathetic." Defendant took the gun and hit Matthew in the head, at which point Matthew's penis made contact with Sarah's vagina.

¶ 10 Defendant told Matthew and Sarah to get dressed and allowed Sarah to use the washroom. Derrick honked the horn on the car and defendant yelled out the window that Andre was coming downstairs, and then allowed Andre to leave. When defendant put the gun down for a second, Matthew grabbed a weight from his weight bench and hit defendant over the head. Defendant fell to the ground and Sarah escaped the apartment and found a security guard who called 911. When police arrived at Matthew's apartment, they found that he had been shot dead and his body was lying in a pool of blood.

¶ 11 After defense counsel gave her opening statement and the State called one witness, the court went into recess for lunch. During the lunch break, the parties reached an agreement for defendant to plead guilty. The negotiated plea called for defendant to plead guilty to first-degree murder and home invasion under indictment 98 CR 11525 and aggravated criminal sexual assault under indictment 98 CR 11527. After defendant formally changed his plea to guilty on the above

charges, the trial court asked if defendant was willing to stipulate "to the opening statement given by [the ASA] in the trial would serve as a factual basis, and the State would have evidence to support [the ASA's] opening statement." Defense counsel agreed to the stipulation. In accordance with the terms of the agreement, the trial court sentenced defendant to 55 years' imprisonment for the first-degree murder of Flowers, 30 years for home invasion, and 30 years for the aggravated criminal sexual assault of Flowers, to be served concurrently. *People v. Donelson*, 2013 IL 113603.

¶ 12    After accepting defendant's guilty plea, the trial court admonished defendant that he:

"He has a right to appeal. Before he files a Notice of Appeal, he must file within this court within 30 days of today's date a written motion stating facts, seeking to have the pleas, sentences, and judgments vacated. If he is without money, a free lawyer, free transcript will be given to him. If the motion to vacate the pleas of guilty is granted, the pleas will be vacated and the case reset for trial. Any point not raised in the motion will be waived on appeal."

¶ 13    On February 27, 2001, defendant filed a *pro se* motion to withdraw his guilty plea, which the trial court denied. Defendant had argued that he "did not have full knowledge of the consequences" of his plea. On appeal, the People confessed error, and the court remanded the case. *People v. Donelson*, 2013 IL 113603 at ¶ 7 (*Donelson II)* (citing *People v. Donelson*, 1-01-2127 and 1-01-2140 (consolidated)).

¶ 14    On remand, defense counsel filed amended motions to withdraw defendant's plea of guilty and vacate his sentences. Thereafter, on May 22, 2003, defense counsel indicated that the parties

had reached an agreement in which defendant would withdraw his motions in exchange for a reduction of sentence on the first-degree murder conviction from 55 years to 50 years' imprisonment. The court had the following conversation about the agreement:

THE COURT: Does the State have any objection to the motion being filed *nunc pro tunc* and, secondly, as to the request by defense to reduce the sentence from 55 years?

[ASA]: No. The State has no objection. As part of an agreement the defendant would withdraw the previously filed motions and not litigate that issue any further.

There was no "objection or disagreement" from defense counsel or defendant regarding the prosecutor's remarks. *Donelson II*, 2013 IL 113603 at ¶ 8. Defendant indicated he was "satisfied" with the representation he received.

¶ 15 On April 23, 2009, defendant filed a *pro se* motion for leave to file a petition for relief from judgment pursuant to 735 ILCS 5/2-1401 (West 2008), which the trial court denied. *People v. Donelson*, 2011 IL App (1st) 092594, ¶ 7 (*Donelson I*). In the § 2-1401 petition, defendant argued that he "was promised 30 years" and did not receive it. However, on appeal from the dismissal of the petition, defendant solely contended that the concurrent nature of his sentences rendered the guilty plea void. *Id*. at ¶ 9. This Court agreed with defendant that the trial court should have imposed consecutive sentences in this case. *Id*. at ¶ 9. But this Court rejected defendant's further argument that both the judgment and plea had to be vacated due to the sentencing error. *Id*. at ¶¶ 7, 13. We observed that in this case, "the appropriate remedy for defendant's void sentence is a remand for resentencing" and noted that the plea agreement "taken as a whole" was "not contrary

to statutory authority and thus not void." *Id*. at ¶¶ 13, 18. We further added that defendant did not have the right to withdraw his plea. *Id*. at ¶ 19. We ordered the case be remanded for resentencing in accordance with both the agreement and the applicable statutes. *Id*. at ¶ 22.

¶ 16    Defendant's petition for leave to appeal to the Illinois supreme court was granted. *People v. Donelson*, _ Ill.2d _, 2012 Ill.LEXIS 469 (March 28, 2012). Our supreme court affirmed the appellate court's ruling that "plea agreements, like all contracts, occasionally include mistakes of law or fact," and that the " 'equitable solution' reached by the appellate court in this case ma[de] way for reformation of the parties' agreement in such a way as to give both parties the benefits of their bargain." *Donelson II*, 2013 IL 113603 at ¶ 17. The court noted that "the procedural history of his case does in fact indicate that defendant's concern - apart from limiting his criminal convictions to three - was to set an upper limit on the time he would spend in prison," observing that he originally bargained for a 55-year sentence on his murder conviction and two 30-year sentences for his other convictions. It further observed that he had only ever attempted to negotiate for a lower sentence on the greater sentence and that "nothing in the defendant's actions, or the procedural history of this case, evinces any concern over the two 30-year sentences" he had received. *Id*. at ¶ 24. Hence, the court concluded that defendant's sentence could be reconfigured, consistently with statutory mandates, in such a way to give him the benefit of his bargain and kept his underlying guilty plea intact and remanded solely for re-sentencing "in accordance with both the plea agreement and applicable statutes." *Id*. at ¶ 29.

¶ 17    On remand, the trial court imposed a sentence of 44 years' imprisonment for the first-

degree murder conviction, with a concurrent sentence of 30 years for home invasion, as well as a 6-year sentence for aggravated criminal sexual assault, the latter to run consecutive to the first-degree murder sentence. *People v. Donelson*, 2014 IL App (1st) 140295-U (*Donelson III*). The trial court also added a mandatory supervised release (MSR) term of 3 years' to life to the aggravated criminal sexual assault conviction. *Id.* At the re-sentencing, the court admonished defendant as follows:

"Now, I need to advise you that you have the right to appeal. In order to appeal, you must within 30 days of today's date file with the court a notice of appeal. If you cannot afford an attorney or the transcripts for the appeal, they will be provided for you, an attorney would be provided for you free of charge. However, you must remember if you fail or forget to put something in your petition regarding what you seek to appeal, it could be waived for all time." *Id.*

¶ 18    Defendant did not file a motion to withdraw his guilty plea at that time, nor did he file a motion to reconsider his sentence. Defendant appealed.

¶ 19    On appeal to this court, defendant challenged the MSR term imposed by the trial court and argued that remand was required where he did not receive proper admonitions under Rule 605. This court observed that Rule 604(d) required that a "defendant, within 30 days of the date on which sentence is imposed, file[] in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment." *Id.* at ¶ 9.  We also observed that compliance with Rule 604(d)

was a "condition precedent" to any appeal, and that lack of compliance with the Rule required dismissal of a defendant's appeal. *Id.* at ¶ 10. However, it cautioned that a "necessary antecedent" to Rule 604(d) was that a defendant receive the admonitions prescribed by Rule 605(b) or (c). *Id.* at ¶ 10-11 (citing *People v. Jamison*, 181 Ill.2d 24, 29-30 (1998)). We concluded:

> "Because [defendant] did not file in the trial court a written motion for reconsideration of his sentence following the imposition of the sentence following the imposition of the sentence he now seeks to challenge, rule 604(d) requires us to dismiss the appeal. [] However, the trial court failed to admonish [defendant] that prior to taking an appeal the defendant must file in the trial court, within 30 days of the date on which sentence is imposed, a written motion asking to have the judgment vacated and for leave to withdraw the plea of guilty, as required by rule 605(c). Following the reasoning of *Jamison*, we hold that when the trial court fails to admonish a defendant in accord with rule 605(c), we must remand the cause to the trial court for the admonitions our supreme court rules require."
>
> *Donelson III*, 2014 IL App (1st) 140295-U, ¶11.

¶ 20    On February 20, 2014, defendant filed another motion to correct his sentence or withdraw his guilty plea. In the motion, he claimed that the trial court's re-sentencing was at "100% truth in sentence" but the terms of his plea agreement specified "the day-for-day clause." On March 18, 2014, defendant's former assistant public defender indicated that she had contacted the Illinois Department of Corrections and clarified and corrected the issue. The court "granted" defendant's motion regarding day-for-day credit. Nonetheless, defendant filed a notice of appeal on April 10,

2014. On May 18, 2015, that appeal was "dismissed on motion of appellant."

¶ 21     On remand, the trial court admonished defendant of his right to appeal pursuant to Rule 605(c). On that date, in response to defendant's statement that he had submitted a "Motion to reconsider to the Illinois Supreme Court," the trial court indicated:

> "Okay. Sure. The only matter that I have pending before me now is the remand from the Appellate Court indicating what I'm supposed to do with the case at this particular point in time. Any other matters that you have pending, I'm sure will be dealt with by the Appellate Court, but the only jurisdiction that I have right now is just over this mandate as far as advising you of your Appellate Court rights okay so let me do that. I'm going to give you a 30 day date, check date on this so okay.
>
> All right. Now I need to advise you that even though you have plead guilty in this case you still have the right to appeal. In order to appeal you must within 30 days of today's date file with the court a written motion asking this Court to either to reconsider this sentence being entered here today, or ask leave to withdraw your plea of guilty.
>
> If that motion were granted the plea of guilty, sentence and judgment would be vacated and a trial date would be set on this and any other matters that the State may seek to reinstate against you that may have been dismissed as a result of the plea. If you cannot afford an attorney for the appeal, one will be appointed provided [*sic*] for you, as well as, copies of the transcripts which resulted in your plea of guilty and sentence, however, you must understand that if you fail, or forget to put something in your petition for the Court to

reconsider in its sentence in vacating the plea, it is waived and given up for all times, do you understand your rights on appeal?"

Defendant indicated that he understood.

¶ 22   On or about December 31, 2015, defendant filed a *pro se* motion to withdraw his guilty plea. An assistant public defender (APD) was appointed to represent defendant.  On June 21, 2016, defendant's APD told the court that defendant was "vigorously objecting" to representation by the public defender's office and stated that defendant was asking her to withdraw. The trial court granted the motion to withdraw.

¶ 23   On September 19, 2016, attorney Coyne formally entered an appearance on behalf of defendant. After several court dates, defendant's counsel informed the court that he had received communication from defendant indicating that defendant wished to proceed *pro se*.

¶ 24   On May 2, 2018, defendant appeared in court and indicated that he wanted to proceed *pro se*. Attorney Coyne informed the trial court that he was prepared to file an amended motion to withdraw defendant's plea of guilty and vacate his sentence, as well as a petition for writ of mandamus to correct defendant's MSR. The trial court allowed counsel to file these documents over defendant's objection. The trial court informed defendant that he would have to be evaluated by Forensic Clinical Services and undergo a behavioral clinical examination (BCX) before the court would allow defendant to represent himself. On July 30, 2018, defendant withdrew his request to proceed *pro se*. However, over the next several months, defendant asked on multiple occasions to be allowed to proceed *pro se* and attempted to file multiple pleadings.

¶ 25    On January 22, 2019, attorney Johnson, an associate of attorney Coyne's, who had represented defendant in court multiple times, asked to switch defendant's representation to Johnson and Levine. On May 13, 2019, Johnson filed a document called "Second Amended Motion to Withdraw Plea of Guilt and Vacate Sentence" as well as his 604(d) certificate. Defense counsel set forth three "separate and independent grounds" as bases to withdraw defendant's plea of guilt:

"there was no factual basis for the plea of guilty in Count 5 of 98 CR 11525 (felony murder based on forcible felony of aggravated criminal sexual assault);

the plea was not knowing and voluntary where the Defendant did not understand the nature of the charges, the trial court never inquired of the Defendant's understanding of the nature of the charges, and the Defendant received ineffective assistance of counsel when defense counsel withdrew the defense of self-defense and never reasserted it after the State and Court verified that the first degree murder charges under 9-1(a)(1) and 9-1(a)(2) [were] reinstated; and

the plea was not knowing and voluntary where the Defendant received ineffective assistance of counsel when defense counsel never advised the Defendant that he could be subject to indefinite and involuntary civil commitment as a sexually violent person upon the expiration of his term of incarceration nor that he would be subject to registration as a sex offender for the rest of his life."

In addition, counsel adopted defendant's previous *pro se* claims that he received ineffective

assistance at the December 27, 2013, resentencing hearing when the APD failed to object to the imposition of a MSR term of 3-years-to-life; that the APD was additionally ineffective at the same hearing for failing to inform defendant that he had a right to file a motion to withdraw his plea and vacate his sentence; a claim of ineffective assistance of trial counsel for failing to move to suppress his statement prior to the trial; and a claim that the trial court erred in sentencing him to a MSR term of 3-years-to-life and that the proper relief is to permit him to withdraw his plea rather than correct his sentence.

¶ 26    On August 14, 2019, the trial court heard argument regarding whether defendant was entitled to an evidentiary hearing on his motion to withdraw his plea of guilt and vacate his sentence. The trial court asked defense counsel whether the fact that defendant withdrew his motion to vacate his plea in 2003 and that it was "part and parcel" of the re-sentencing at the time had bearing on the instant claim. Defense counsel indicated that defendant was now raising "different claims" than the ones in that motion. The trial court also noted that defendant had, subsequent to the May 2003 re-sentencing, filed another motion to reduce his sentence which the court denied, and which defendant appealed.

¶ 27    In response, the State argued that if the trial court granted defendant's request to withdraw his plea, it would be against the purpose of Rule 604(d), which requires a defendant to make a motion within 30 days and would be allowing him to take an issue or matter that "has already been negotiated and use it towards his advantage." The State reminded the trial court that defendant had willingly withdrawn his motion to withdraw his plea in exchange for a sentence reduction in 2003

and noted that this court had indicated that a fully negotiated plea is governed by contract law "but under a criminal framework." The State further argued that both parties had to derive benefit from such a plea and that it was improper to raise a motion to withdraw his guilty plea when the matter had already been rejected by both the higher courts.

¶ 28 The court asked defendant to reply to the State's contract law argument. Defense counsel indicated that an important part of a contract would be defendant having effective counsel. The trial court asked defense counsel how counsel could be considered ineffective where the "result accrued to the benefit of the client." Defense counsel responded that it was possible that the sentence could have been lower and possibly without a sex charge. The court found that argument to be speculative.

¶ 29 The trial court ultimately denied defendant's motion, ruling as follows:

"The defendant seeks leave to file and proceed on his motion to withdraw his plea of guilty and vacate a sentence based upon ineffective assistance of counsel.

* * *

In January of 2001, the Defendant pled guilty to first-degree murder, home invasion, aggravated criminal assault and a separately charged aggravated criminal sexual assault. Pursuant to that fully-negotiated plea agreement, the Defendant was sentenced to 55 years for first-degree murder, 30 years for home invasion and 30 years for aggravated criminal sexual assault. All three sentences were to run concurrently.

Subsequently, the Defendant filed a motion to vacate his guilty plea and an

amended motion to withdraw his guilty plea. In May of 2003- in May of 2003, he withdrew his motion to withdraw his plea and sentence, and his sentence was reduced from 55 years to 50 years on the first-degree murder, and it was to run concurrently with the 30- year sentence on the aggravated criminal sexual assault.

In May of 2009, Defendant filed a motion for relief from a void judgment. He alleged that he was improperly admonished and received ineffective assistance of counsel from his trial attorney. The Defendant's motion was denied and the Defendant appealed.

In this appeal, the Defendant argued that his conviction should be vacated and void because the trial court improperly imposed concurrent sentences instead of consecutive sentences. The Appellate Court found that the appropriate remedy for the Defendant's void sentence was remand for resentencing. The Appellate Court denied the argument that his conviction should be vacated. Ultimately, the Illinois Supreme Court affirmed the Appellate Court ruling - I'm sorry the Illinois Supreme Court affirmed the Appellate Court ruling and sent the case back to the trial court for resentencing within the mandate of the Supreme Court decision.

Invoking principles of contract law, the Illinois Supreme Court stated that when the plea agreement was fully negotiated, both sides were under the mistaken belief that the sentences for first-degree murder and the aggravated criminal sexual assault could run concurrently for a total of 55 years that was ultimately reduced to 50 years. In fact, under the law, the sentences had to be consecutive. In their opinion, the Court stated that the

15

parties' mutual mistake may be rectified by recourse to contract - to contract reformation where the parties were in actual agreement and their true intent may be discerned.

In this case, upon return to the trial court for resentencing, what was a concurrent sentence of 55 years was reformed to consecutive sentences totaling 50 years so as to rectify the mutual mistake and give the Defendant the benefit of his bargain to an otherwise fully-negotiated plea agreement. The Defendant now attempts again to withdraw his plea and vacate his sentence based upon ineffective assistance of counsel, bootstrapping on the remand upholding the plea agreement but reforming the void sentence to carry out the intent of both the Defendant and the State so that the Defendant received the benefit of his bargain.

To allow the Defendant to proceed with his latest attempt to withdraw his plea and vacate his sentence some 21 years after the crimes were committed and 18 years since the Defendant pled guilty pursuant to the plea agreement would be prejudicial to the State if it were forced to attempt to retry the case and thus deprive the State of the benefit of their portion of the bargain. Again, the Defendant's latest attempt to withdraw his plea and vacate his sentence is denied."

¶ 30    Defendant now appeals.

¶ 31                    ANALYSIS

¶ 32    Defendant raises one claim in this court: that the trial court erred where it refused to consider the merits of his latest motion to withdraw his guilty plea and vacate his sentence.

16

Defendant argues that the court's "actions failed to comply with the dictates of this Court's mandate" in *Donelson III*, 2014 IL App (1st) 140295-U, and further claims that "the judge had no authority to refuse to consider the substantive claims in [defendant's] timely-filed motion to withdraw guilty plea."

¶ 33   We disagree. This cause was remanded for the trial court to admonish defendant in accordance with Rule 605(b). Rule 605(b) admonishments are mandatory and require that a defendant be informed "[i]n all cases in which a judgment is entered upon a plea of guilty," at the time of sentencing of certain appeal rights and requirements. 145 Ill.2d R. 605(b). Rule 605(b) admonitions are, therefore, mandatory. Defendant was properly admonished in accordance with Rule 605(b) on remand. The court subsequently considered defendant's request to file a motion to withdraw his guilty plea under Rule 604(d) and denied it.

¶ 34   The decision to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the circuit court and, as such, is reviewed for abuse of discretion. *People v. Walston*, 38 Ill. 2d 39, 42 (1967). An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court. *People v. Patrick*, 233 Ill.2d 62, 68 (2009) (citing *People v. Hall*, 195 Ill.2d 1, 20 (2000)). A defendant does not have an automatic right to withdraw a plea of guilty and must show a manifest injustice under the facts involved. *People v. Jamison*, 197 Ill.2d 135, 163 (2001).

¶ 35   Contrary to defendant's argument, the court was in no way obligated to grant defendant's motion to withdraw his guilty plea or to consider the merits of the motion. The court was merely

instructed on remand to properly admonish defendant under Rule 605(b), which it did. The trial court satisfied the requirements of this mandate on December 16, 2015, when it admonished defendant in compliance with Rule 605(d). The mandate did not require the court to allow defendant's motion to withdraw his guilty plea. The record shows that the court carefully considered whether to allow defendant's motion but ultimately decided against it. We cannot say that the court's decision to deny defendant's motion was an abuse of discretion given defendant's numerous prior attempts to vacate his guilty plea. We therefore find that the trial court did not abuse its direction in denying defendant leave to file his motion to withdraw his guilty plea.

¶ 36　　　　　　　　CONCLUSION

¶ 37　　Based on the foregoing, the judgment of the circuit court is affirmed.

¶ 38　　Affirmed.